2015 CO 22

### In the MATTER OF Juliet Carol GILBERT

**Supreme Court Case No. 13SA254**

Supreme Court of Colorado.

April 6, 2015

Rehearing Denied April 27, 2015

---

Attorneys for Complainant–Appellant: Office of Attorney Regulation Counsel, James C. Coyle, Regulation Counsel, Adam J. Espinosa, Assistant Regulation Counsel, Denver, Colorado

Attorney for Respondent–Appellee: MiletichCohen PC, Nancy L. Cohen, Denver, Colorado

JUSTICE MÁRQUEZ delivered the Opinion of the Court.

¶ 1 In this attorney discipline proceeding, the respondent, Juliet Carol Gilbert, agreed to provide certain immigration-related legal services to Christopher Henderson and Victoria Peters for a flat fee. The written fee agreement did not include milestones or otherwise describe what payment, if any, the clients would owe Gilbert if the representation ended before she completed all of the specific tasks identified in the agreement. When her clients terminated the representation early, Gilbert retained a portion of the fees advanced by the clients as compensation for the approximately four-and-a-half hours of work she had performed on the case to that point.

¶ 2 The Office of Attorney Regulation Counsel brought a disciplinary action against Gilbert alleging, among other things, that she violated Colorado Rule of Professional Conduct 1.16(d), which requires attorneys, upon termination, to refund any advance payment of fee that "has not been earned." The Office of Attorney Regulation Counsel argued that Gilbert was obligated to refund the entire advance fee paid by the clients because the fee agreement did not provide for either the assessment of a fee in the event of early termination or for any hourly fee. The Hearing Board determined, however, that Gilbert was entitled to a portion of the fee in quantum meruit because she had provided legal services for the clients and it would be unjust for the clients to retain the benefit of those services without compensating Gilbert. Because Gilbert had earned a portion of the advance fee in quantum meruit, the Board concluded that Gilbert did not violate Rule 1.16(d) by retaining the funds earned.[1]

¶ 3 The Office of Attorney Regulation Counsel seeks review of the Hearing Board's determination. We conclude that the Hearing Board did not err when it determined that Gilbert did not violate Rule 1.16(d) under the circumstances of this case. Accordingly, we affirm the Board's order.

## I. Facts and Procedural History

¶ 4 Gilbert was a sole practitioner specializing in immigration law. In May 2011, she agreed to represent Victoria Peters in removal proceedings before the immigration court.

¶ 5 Peters, a Trinidad and Tobago native, married Christopher Henderson in 2004. Henderson, however, had previously married Carmen Sanchez, a native of the Dominican Republic, and had never terminated or annulled that marriage. When Henderson filed a Form I–130 "Petition for Alien Relative" to classify Peters as his spouse, Henderson did not disclose his first marriage or the fact that the U.S. Citizenship and Immigration Services ("USCIS") had determined that his marriage to Sanchez was a sham. USCIS representatives met with Henderson and Peters and determined that the couple had married only to obtain lawful immigration status for Peters. The USCIS therefore denied the I–130 Petition, and the U.S. Department of Homeland Security initiated removal proceedings against Peters.

¶ 6 Henderson and Peters met with Gilbert a week before Peters' first appearance in immigration court for a master calendar

---

1. *People v. Gilbert*, Case No. 12PDJ085 (Colo. O.P.D.J. July 17, 2013).

hearing. Gilbert advised them that Peters had no relief other than voluntary departure from the United States. However, Gilbert told the couple that she could help them file a second I–130 Petition to demonstrate that they had a bona fide marriage and that the immigration judge would continue Peters' removal case until the second I–130 Petition was adjudicated. Gilbert also explained that Henderson could not file the second I–130 Petition until he legally terminated or annulled his marriage to Sanchez. During the meeting, Gilbert showed the couple her standard fee schedule, which listed an hourly rate of $250 for "Miscellaneous Immigration and Consumer Rights Cases."

¶ 7 Gilbert followed up their meeting by mailing an engagement letter to Henderson and Peters defining the scope of her representation, which the couple signed and returned. The agreement provided that, for a flat fee of $3,550, Gilbert would perform three tasks: represent Peters at the master calendar hearing, assist the couple with the second I–130 Petition, and accompany them to their interview with USCIS. Notably, the fee agreement did not include benchmarks or milestones to indicate when Gilbert would earn portions of the advance fee, nor did it explain what payment, if any, the clients would owe Gilbert if the representation ended before she completed all three tasks.

¶ 8 Between May and August 2011, the couple paid installments totaling $2,950 toward Gilbert's $3,550 flat fee. Gilbert represented Peters at the master calendar hearing at the end of May, and the immigration court granted a continuance so that Henderson could seek an annulment of his first marriage. During the summer, Gilbert conducted legal research on the case and corresponded with the clients. By November, however, communication between Gilbert and the couple had broken down, and they discharged Gilbert. In an email to Gilbert terminating her representation, Peters and

Henderson acknowledged that Gilbert was entitled to payment for one hour for her appearance at the May hearing. They requested that Gilbert refund their payments, minus her hourly fee for the master calendar appearance. They also asked what her hourly charge was, noting that the fee agreement did not contain an hourly rate.

¶ 9 Once the immigration court granted her motion to withdraw, Gilbert mailed Henderson and Peters a letter and a partial refund of the advance fee payment. Gilbert's letter explained that she had spent 4.41 hours on legal work at $250 an hour—including the court appearance, travel time, research, correspondence, and the motion to withdraw—and that she had incurred $11.64 in costs. She therefore retained $1,114.14 as compensation for the work performed and refunded the remaining $1,835.86 of the advance fee payment. Henderson and Peters disputed the amount that Gilbert retained as earned fees.[2]

¶ 10 Henderson and Peters contacted the Office of Attorney Regulation Counsel and requested an investigation. The Office of Attorney Regulation Counsel filed a complaint against Gilbert, alleging several violations of the Colorado Rules of Professional Conduct in her dealings with Henderson and Peters. The Hearing Board ultimately held that Gilbert violated Colo. RPC 1.15(a), 1.15(c), and, in turn, 1.5(f),[3] because she commingled her clients' funds with her own by immediately placing the couple's fee payments in her business account upon receipt, before she earned them. For these violations, the Hearing Board ordered Gilbert suspended from the practice of law for three months, stayed upon the successful completion of six months' probation.[4] The Board concluded that the Office of Attorney Regulation Counsel had not proven the other alleged violations, including its claims that Gilbert violated Colo. RPC 8.4(c), which prohibits conduct involving dishonesty, fraud,

---

**2.** Although she continued to believe that she had earned the $1,114.14, Gilbert later refunded this remaining amount to the clients in February 2013, shortly after disciplinary proceedings were commenced against her.

**3.** Citations are to the Colorado Rules of Professional Conduct as they appeared in the Hearing Board's 2013 opinion, before they were repealed and readopted effective June 17, 2014.

**4.** Gilbert does not appeal the Hearing Board's determination or the sanction imposed.

deceit, or misrepresentation, and Colo. RPC 1.15(b), which requires attorneys to provide a prompt accounting when requested. The Office of Attorney Regulation Counsel does not challenge these rulings.

¶ 11 Relevant here, the Hearing Board dismissed the claim that Gilbert failed to refund unearned fees in violation of Colo. RPC 1.16(d) when she retained part of the advance fee payment as compensation for the work she had performed instead of refunding the entire amount upon her discharge. To determine whether Gilbert violated Rule 1.16(d), the Hearing Board first ascertained whether the funds that Gilbert retained had been "earned" for purposes of the Rule. The Board found that Gilbert showed Henderson and Peters her standard fee schedule, which indicated that she charged an hourly rate of $250 for "miscellaneous immigration" cases, but that this schedule was not part of the written fee agreement. The Hearing Board also found that the written fee agreement did not describe what payment, if any, would be due if the representation ended before Gilbert completed the three tasks she agreed to perform. However, the Board observed that this court has recognized an attorney's right to quantum meruit recovery for the reasonable value of services the attorney provided before being discharged. The Hearing Board reasoned that, under the circumstances of this case, Gilbert was entitled to recover a portion of her fee in quantum meruit. Accordingly, the Board concluded that Gilbert did not violate Rule 1.16(d) by retaining a portion of the fee she believed she had earned.

¶ 12 Specifically, the Hearing Board concluded that the elements of quantum meruit were present here because: Gilbert "unquestionably provided legal services"; Peters received a benefit from Gilbert's services; and it would be unjust in light of the parties' intentions and expectations for Peters to retain the benefit of Gilbert's services without paying for them. The Hearing Board observed, for example, that Peters acknowl-

edged in her email terminating Gilbert that Gilbert was entitled to a fee for her appearance at the hearing. The Board found that although Peters and Henderson may not have realized that Gilbert had also performed legal research on the case, it was "entirely reasonable" for Gilbert to have done so and to have billed her clients for the time she spent communicating with them.[5] Finally, the Hearing Board found that Gilbert's misconduct in this case did not bar her from quantum meruit recovery because "although she violated Colo. RPC 1.15(a), 1.15(c), and 1.5(f), her misconduct was not willful, it did not vitiate the value of her legal services, and her clients were made whole."[6] Thus, the Hearing Board concluded that because Gilbert was entitled to a portion of her fee in quantum meruit, she did not violate Rule 1.16(d) by failing to return unearned funds.

¶ 13 Pursuant to C.R.C.P. 251.1(d) and C.R.C.P. 251.27(a), the Office of Attorney Regulation Counsel now seeks review of the Hearing Board's determination that Gilbert did not violate Rule 1.16(d).

## II. Standard of Review

¶ 14 Under C.R.C.P. 251.27(b), this court affirms the decision of the Hearing Board unless we determine, based on the record, that the Hearing Board's findings of fact are clearly erroneous or unsupported by substantial evidence in the record, or that the form of discipline imposed (1) bears no relation to the conduct, (2) is manifestly excessive or insufficient in relation to the needs of the public, or (3) is otherwise unreasonable. C.R.C.P. 251.27(b); *In re Haines,* 177 P.3d 1239, 1244 (Colo.2008). We review the Board's conclusions of law de novo. C.R.C.P. 251.27(b); *In re Haines,* 177 P.3d at 1245.

## III. Analysis

¶ 15 Colorado Rule of Professional Conduct 1.16(d) protects clients' interests by requiring attorneys to refund unearned fees when the representation ends:

---

**5.** The Hearing Board also observed that Gilbert did not charge Peters and Henderson for all of the legal services she provided.

**6.** The Hearing Board noted that Peters and Henderson discharged Gilbert because of a general deterioration of the relationship, and not because Gilbert was commingling their funds or for any other fault on her part.

*Upon termination of representation, a lawyer shall take steps* to the extent reasonably practicable *to protect a client's interests, such as* giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and *refunding any advance payment of fee or expense that has not been earned or incurred. . . .*

(Emphasis added.) A discharged attorney violates this rule if she fails to refund unearned fees in a timely fashion. *In re Sather*, 3 P.3d 403, 415 (Colo.2000). Thus, whether Gilbert violated Rule 1.16(d) by failing to refund unearned fees turns on whether she "earned" the portion of the advance fee that she retained as compensation for the work she performed before she was discharged.

¶ 16 The Office of Attorney Regulation Counsel argues that Gilbert violated Rule 1.16(d) because the flat fee agreement in this case did not expressly provide for compensation for work performed short of completing all three tasks identified: appearing at the hearing, filing the second I–130 Petition, and attending the interview with USCIS. In support of its argument, the Office of Attorney Regulation Counsel relies on Colo. RPC 1.5(b), which requires an attorney who has not regularly represented the client to communicate the basis or rate of her fee and expenses to the client, in writing, before or within a reasonable time after commencing the representation. The Office of Attorney Regulation Counsel also points to comment 11 to Rule 1.5, which states that the written statement explaining the basis or rate of the fee "should include a description of the benefit or service that justifies the lawyer's earning the fee," as well as "a statement describing when a fee is earned."

¶ 17 Rule 1.5(f) explains that an attorney earns the fee when she "confers a benefit on the client or performs a legal service for the client." Colo. RPC 1.5(f); *see also In re Sather*, 3 P.3d at 410 ("[A]n attorney earns fees only by conferring a benefit on or performing a legal service for the client."). The Office of Attorney Regulation Counsel points to comment 12 to this rule, which states that advance fees are earned "only as the lawyer performs specified legal services or confers benefits on the client as provided for in the written statement of the basis of the fee. . . ."

¶ 18 Relying on these comments to Rule 1.5, the Office of Attorney Regulation Counsel contends that, for purposes of Rule 1.16(d), Gilbert did not "earn" the $1,114.14 that she retained as compensation for the legal services she performed before she was discharged because the fee agreement contained no provision governing payment of fees in the event that Gilbert's representation ended before she completed the three identified tasks. Thus, regulation counsel argues, Gilbert's failure to promptly refund the *entire* advance fee violated Rule 1.16(d). In addition, the Office of Attorney Regulation Counsel contends that this court's opinion in *In re Sather* required Gilbert to return the entire advance fee and then separately seek quantum meruit recovery against her former clients if she wished.

¶ 19 Gilbert counters that the Office of Attorney Regulation Counsel's reliance on Rule 1.5(b) (requiring the attorney to communicate the "basis or rate of the fee" in writing) is misplaced, given that it never alleged that she violated Rule 1.5(b). Gilbert further argues that she did not violate Rule 1.16(d) by failing to refund unearned fees because she was entitled to a portion of the advance fee under quantum meruit.

¶ 20 To determine whether Gilbert violated Rule 1.16(d), we briefly review our prior cases generally discussing an attorney's right to recover fees in quantum meruit. We then examine our cases discussing quantum meruit in the context of attorney discipline matters, particularly *In re Sather*. We conclude that *In re Sather* does not stand for the proposition that where a noncontingent fee agreement is silent as to how the attorney will be paid in the event of early termination, the attorney must return the entire advance fee upon discharge regardless of the work performed to that point. To the contrary, the facts and holding of *In re Sather* are consistent with the Hearing Board's conclusion here that Gilbert did not violate Rule 1.16(d) by failing to return the portion of the advance fee to which she was entitled in quantum meruit. Although Gilbert violated

other ethical rules not at issue here, we conclude that, under the circumstances of this case, Gilbert did not violate Rule 1.16(d) by failing to refund the portion of the advance fee to which the Hearing Board determined she was entitled in quantum meruit as compensation for the services she provided before her discharge.

## A. Quantum Meruit in Fee Dispute Cases

¶ 21 Quantum meruit is an equitable doctrine that invokes an implied contract where the parties either have no express contract or have abrogated it. *See Dudding v. Norton Frickey & Assocs.*, 11 P.3d 441, 444 (Colo.2000). The doctrine does not depend on the existence of a contract, either express or implied in fact, but rather applies where a need arises to avoid unjust enrichment to a party in the absence of an actual agreement to pay for the services rendered. *See id.* That is, the equitable doctrine of quantum meruit "seeks to restore fairness when a contract fails" by "ensuring that the party receiving the benefit of the bargain pays a reasonable sum for that benefit." *Id.* at 445. To recover in quantum meruit, a plaintiff must demonstrate that: (1) the defendant received a benefit, (2) at the plaintiff's expense, and (3) it would be unjust for the defendant to retain that benefit without paying for it. *Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.*, 2012 CO 61, ¶ 19, 287 P.3d 842, 847; *Dudding, 11 P.3d at 445.

¶ 22 In the legal services context, courts applying the doctrine of quantum meruit have recognized that when a client discharges his or her attorney, the client remains obligated to pay the reasonable value of the services rendered, barring conduct by the attorney that would forfeit the attorney's right to receive a fee. *Dudding,* 11 P.3d at 445; *see also Olsen & Brown v. City of Englewood*, 889 P.2d 673, 675 (Colo.1995) ("There is no question that an attorney who withdraws for a justifiable reason or is terminated by a client without cause is entitled to

compensation for services rendered."). At the same time, we have recognized that the trust and confidence that underlies the attorney-client relationship distinguishes this relationship from other business relationships. *Dudding*, 11 P.3d at 445. By allowing an attorney to recover the reasonable value of services provided, the doctrine of quantum meruit operates to preserve the client's right to discharge an attorney while preventing clients from unfairly benefiting at their attorney's expense where the parties have no express contract or have abrogated it. *See LaFond v. Sweeney*, 2015 CO 3, ¶ 27, 343 P.3d 939, 947; *Melat*, ¶ 19, 287 P.3d at 847; *Dudding*, 11 P.3d at 447; *see also* Colo. RPC 1.16 cmt. 4 ("A client has a right to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services.").

¶ 23 In cases involving fee disputes, we have recognized that quantum meruit is an appropriate measure of recovery for the reasonable value of work performed by an attorney who is discharged without cause. In *Olsen & Brown,* for example, we held that an attorney who was discharged without cause could not recover damages for services not performed before his discharge based on the client's breach of the parties' noncontingent attorney-client contract. 889 P.2d at 677. Rather, we held that the discharged attorney's remedy was to recover the reasonable value of services actually performed on the basis of quantum meruit. *Id.*[7]

¶ 24 We have applied the doctrine of quantum meruit differently to contingent fee arrangements. Given the unique nature of contingent fee agreements, we have held that an attorney who is discharged or withdraws may seek quantum meruit recovery for the reasonable value of the work performed before discharge or withdrawal, but only where the written contingent fee agreement contemplates the availability of such recovery. *See Dudding*, 11 P.3d at 446; *Elliott v. Joyce*, 889 P.2d 43, 46 (Colo.1994). In *Elliott*, we observed that contingent fee agree-

---

**7.** We have also applied the doctrine of quantum meruit in other situations where a fee agreement failed. In *Melat,* for example, we held that an

attorney could pursue an action in quantum meruit against former *co-counsel* for a share of the contingent fee where the attorney withdrew from

ments in Colorado are limited by this court's rules governing contingent fees, as set forth in C.R.C.P. Chapter 23.3. *See* 889 P.2d at 45. Chapter 23.3 requires a contingent fee agreement to be in writing and to contain certain specific information. *Id.; see also* C.R.C.P. Ch. 23.3, Rule 5. Importantly, Rule 5(d) expressly requires that the written contingent fee agreement include "a statement of the contingency upon which the client is to be liable to pay compensation otherwise than from amounts collected for him by the attorney." *Elliott,* 889 P.2d at 45; *see also* C.R.C.P. Ch. 23.3, Rule 5(d). And Rule 6 provides that no contingent fee agreement shall be enforceable by the involved attorney unless the agreement substantially complies with the rules. *Elliott,* 889 P.2d at 45; *see also* C.R.C.P. Ch. 23.3, Rule 6. Given our specific rules under Chapter 23.3 governing the content of contingent fee agreements, we held in *Elliott* that an attorney who withdraws before completion of the case may seek quantum meruit recovery only where "the contingent fee agreement specifically sets forth the circumstances under which the client will be liable." 889 P.2d at 46. This result is admittedly somewhat counterintuitive, given that the very purpose of the equitable doctrine of quantum meruit is to assure fairness in situations where the parties have no express agreement.

¶ 25 Six years later, in *Dudding*—another contingent fee case—we acknowledged that the doctrine of quantum meruit has arisen "precisely to address the absence of a written agreement." 11 P.3d at 448. Nevertheless, we felt compelled to honor both our prior case law and our rules governing contingent fee agreements by reaffirming that, to seek quantum meruit recovery, the attorney must provide some notice to the client in the fee agreement of the possibility that the attorney may seek equitable recovery in quantum meruit if the contract fails. *Id.* at 448, 449.[8] Importantly, *Dudding* concerned a contin-

gent fee agreement, and nothing in our discussion in that case expressly extended its holding to other types of fee agreements.

¶ 26 Soon thereafter, we made clear in *Mullens v. Hansel-Henderson,* 65 P.3d 992, 998 (Colo.2002), that our holding in *Dudding* does not apply to situations where the attorney has successfully completed the agreed-upon legal services in a contingent fee agreement. In reaching that conclusion, we reasoned that Rule 5(b) requires a contingent fee agreement to give a client notice of the possibility of quantum meruit recovery because, absent such notice, a contingent fee client has "no expectation to pay" if the attorney withdraws prematurely. *Id.* at 997. However, where the attorney has successfully completed the agreed-upon legal services, the very nature of the contingent fee agreement gives rise to the client's expectation that she must pay the attorney from the funds the attorney has recovered for the client. *Id.* at 998–99. Because the attorney in *Mullens* had completed the legal services for which he was retained under the contingent fee arrangement and had obtained a substantial settlement for the client, we held that he properly retained fees in quantum meruit for the reasonable value of the legal services he provided, even though the parties' contingent fee agreement was unenforceable because it was not in writing. *Id.* at 999.

## B. Quantum Meruit in Attorney Discipline Cases

■ ¶ 27 We have carried principles of quantum meruit recovery into our attorney discipline cases. Relevant here, our prior rulings indicate that, where the parties have a flat fee agreement, a discharged attorney does not violate the ethical obligation to refund unearned fees where the attorney is entitled to a portion of the fee in quantum

the case before it was completed. ¶ 6, 287 P.3d at 845.

**8.** As we pointed out in *Mullens v. Hansel-Henderson,* 65 P.3d 992 (Colo.2002), Rule 7 of Chapter 23.3 now provides a form Contingent Fee Agreement which contains a sample notice provision for such agreements: "In the event the client terminates this contingent fee agreement

without wrongful conduct by the attorney which would cause the attorney to forfeit any fee, or if the attorney justifiably withdraws from the representation of the client, the attorney may ask the court or other tribunal to order the client to pay the attorney a fee based upon the reasonable value of the services provided by the attorney." *Id.* at 996 (quoting C.R.C.P. Ch. 23.3, Rule 7, Form 2, subsection 3).

meruit for the reasonable value of services rendered before being discharged.

¶ 28 In *People v. Johnson*, 199 Colo. 248, 612 P.2d 1097, 1098 (1980), private defense counsel received an advance payment of $1,500 toward an orally agreed-upon total fee of $5,000 to handle a murder case. The client discharged him soon thereafter, and the attorney failed to refund any of the money despite the client's requests for a refund of the unearned portion of the $1,500 payment. *Id.* We held that because there was no definitive agreement regarding the amount that the attorney would be paid if his services were terminated, the oral fee agreement necessarily "was upon a quantum meruit basis." *Id.* at 1099. The grievance committee found that the attorney was entitled to $500 on a quantum meruit basis for work performed, and we agreed with this determination. However, the grievance committee also determined that by retaining the additional $1,000 that was unearned, the attorney violated DR–2–110(A)(3), the disciplinary rule then in effect requiring prompt refund of unearned parts of a fee. *Id.* We affirmed the committee's determination that the attorney violated DR–2–110(A)(3) by "failing to return that portion of the $1500 payment which was unearned." *Id.* We ordered the attorney to return $1,000 in unearned fees to his client, but in so doing, we implicitly allowed him to retain the $500 to which he was entitled under quantum meruit. *Id.*

¶ 29 Our more recent decision in *In re Sather* likewise took no issue with an attorney's retention of a portion of a flat fee as compensation for services provided before discharge. 3 P.3d at 415. In that case, we disciplined an attorney under current Rule 1.16(d) for failing to return the unearned portion of a $20,000 advance fee after his client discharged him. *Id.* at 405. The written agreement between the attorney and client described the arrangement as a "non-refundable" flat fee contract and stated that the client acknowledged that the "minimum flat fee" of $20,000 would not be returned to him regardless of the amount of time that the firm expended. *Id.* at 406. After the client discharged the attorney, the attorney provided an accounting claiming that his fees and expenses as of the date of discharge totaled $6,923.64. *Id.* at 407. Despite the "non-refundable" language in their agreement, the attorney acknowledged that he should refund the remaining $13,076.36 to the client.[9] *Id.* However, the attorney did not fully refund this difference until nearly five months later and thus violated Rule 1.16(d) by failing to return the unearned fee in a timely manner. *Id.*

¶ 30 Significantly, we held that the attorney violated Rule 1.16(d) by failing to return the *unearned* $13,076.36—not by failing to return the entire $20,000 advance payment. *See id.* at 415 ("Upon discharge, [the attorney] acknowledged his obligation to return the *unearned portion of the $20,000* to [the client], and [the attorney] eventually returned the *entire unearned amount of $13,-076.36....* Because [the attorney] only partially returned the unearned fees three months after being discharged and did not return the remainder of the unearned fees until five months after being discharged, we agree with the Board that his conduct violated Colo. RPC 1.16(d)." (emphasis added)). In so doing, we first implicitly recognized that the attorney "earned" and rightfully retained $6,923.64 for his work—even though nothing in the opinion suggested that his "non-refundable" flat fee agreement provided for quantum meruit recovery (or an hourly fee) upon early termination. We then concluded that he violated Rule 1.16(d) by failing to return the portion of the fee that he had not earned.

¶ 31 The Office of Attorney Regulation Counsel argues that *In re Sather* requires an attorney who is discharged by her client to refund the *entire* advance fee if the agreement is silent about early termination, regardless of whether the attorney has expended time and money on the case. The Office of Attorney Regulation Counsel points to an isolated statement in *In re Sather* to support this position: "Upon discharge, the attorney

---

9. In addition to violating Rule 1.16(d), the attorney violated Colo. RPC 8.4(c) by characterizing the $20,000 fee as "non-refundable" when he knew that he would have to refund it under certain circumstances. *Id.* at 405.

must return all unearned fees in a timely manner, *even though* the attorney may be entitled to quantum meruit recovery for the services that the attorney rendered and for costs incurred on behalf of the client." *Id.* at 409–10 (emphasis added). The phrase "even though," according to the Office of Attorney Regulation Counsel, means that an attorney must first return all fees that a client has advanced and then pursue quantum meruit recovery in a separate claim against the client.

¶ 32 The Office of Attorney Regulation Counsel's argument fails for two reasons. First, the statement in *In re Sather* on which it relies forms no part of our discussion or holding regarding the attorney's violation of Rule 1.16(d) in that case, but rather appears in a separate part of the opinion discussing an attorney's obligation under Rule 1.15(f) to maintain advance fees in a separate trust account until the fees are earned. *Id.* The Office of Attorney Regulation Counsel therefore reads this language out of context and overlooks the facts of *In re Sather.* The attorney in that case violated Rule 1.16(d) by retaining funds beyond those to which he was entitled in quantum meruit for his work. *Id.* at 415. Had we intended to hold in *In re Sather,* contrary to our approach in *Johnson,* that Rule 1.16(d) requires an attorney to return the *entire* advance fee regardless of any benefits conferred or services rendered, we would have ordered the attorney to return the entire $20,000 that the client paid him. Yet neither in *In re Sather* nor in *Johnson* did we require the attorney to refund all advance fee payments and then separately seek quantum meruit recovery from his former client. It would be a waste of resources in these circumstances to force attorneys to return money to which they are entitled and then bring suit against the client to recover it. Rather, the above-quoted statement in *In re Sather,* read in context, simply acknowledges that, although an attorney must return all *unearned* fees in a timely manner under Rule 1.16(d), such unearned fees do not include compensation to which the attorney is entitled in quantum meruit for the reasonable value of services the attorney has rendered before discharge. *Id.* (citing, inter alia, *Olsen & Brown,* 889 P.2d at 676).

¶ 33 Second, the Office of Attorney Regulation Counsel's argument hinges on its view that, for purposes of *Rule 1.16(d),* an attorney cannot "earn" a fee except as explicitly provided for in the fee agreement. This view is not grounded in Rule 1.16(d) but instead rests on comment 12 to Rule 1.5. Comments to the Rules of Professional Conduct do not add obligations to the Rules but merely provide guidance for practicing in compliance with the Rules. Colo. RPC, Preamble and Scope, ¶ 14. Ultimately, the text of the Rule is authoritative. *Id.* at ¶ 21. Consistent with our decision in *In re Sather,* the text of Rule 1.5(f) provides that fees are earned when the lawyer "confers a benefit on the client or performs a legal service for the client." Colo. RPC 1.5(f); *In re Sather,* 3 P.3d at 410 (holding that fees are earned by "conferring a benefit on or performing a legal service for the client").

¶ 34 The approach that the Office of Attorney Regulation Counsel urges effectively forecloses quantum meruit recovery for the reasonable value of services the attorney actually performed if a flat fee agreement fails to contain benchmarks or milestones setting forth exactly how the attorney will earn the fee shy of completing the agreed-upon services.[10] Such an approach is inconsistent with the result in both *Johnson* and *In re Sather.* It is also inconsistent with the core purpose of quantum meruit, which seeks to provide equity precisely where an agreement is lacking or has failed.

¶ 35 In advancing its argument, the Office of Attorney Regulation Counsel essentially seeks to treat flat fee agreements in the same fashion as contingent fee agreements— yet we have never suggested that the unique

---

**10.** Under the Office of Attorney Regulation Counsel's approach, an attorney with a flat fee agreement can never "earn" a portion of the fee by merely "conferring a benefit or performing a legal service for the client," but instead must complete the agreed-upon services in full. Given this view of how fees are earned, it is difficult to understand how such an attorney who is discharged before completing the agreed-upon services could ever establish entitlement to any portion of the fee in quantum meruit.

requirements of Chapter 23.3 for contingent fee agreements necessarily apply to other types of fee agreements. In stark contrast to the specific requirements for contingent fee agreements, see C.R.C.P. Ch. 23.3, Rule 5, no rule currently requires a noncontingent flat fee agreement to include a provision indicating the possibility of quantum meruit recovery in the event of early termination.

¶ 36 Unlike a contingent fee arrangement, in which the attorney's fee is contingent upon the outcome of the case, a flat fee (sometimes called a "fixed fee") is a fee based on an agreed amount for particular services, regardless of the time or effort involved and regardless of the result obtained. See In re Sather, 3 P.3d at 410 (noting that a "flat fee" is a type of fee paid in advance for specified legal services to be performed by the attorney). Flat or fixed fee arrangements can benefit the client by establishing in advance the maximum amount the client will have to pay for legal fees, thus permitting the client to budget based on a fixed sum rather than face potentially escalating hourly fees that may exceed the client's ability to pay. See id. (citing Alec Rothrock, The Forgotten Flat Fee: Whose Money Is It and Where Should It Be Deposited?, 1 Fla. Coastal L.J. 293, 354 (1999)). Whereas a client in a contingent fee arrangement generally has no expectation of payment unless the attorney obtains a successful result, a client in a flat fee arrangement expects to pay the attorney for his or her services regardless of the result obtained. The flat fee agreement merely establishes the maximum that the client may owe.

¶ 37 Although attorneys are certainly wise to include benchmarks or milestones in flat fee agreements, the Rules of Professional Conduct do not presently require them. Moreover, our case law barring quantum meruit recovery unless the fee agreement includes notice of this possibility arose out of the specific rules governing the content of contingent fee agreements. We have not suggested that the notice requirement pertaining to contingent fee agreements necessarily applies to other forms of fee agreements or that quantum meruit recovery under other types of fee agreements is likewise barred absent such notice.

## C. Gilbert Did Not Violate Rule 1.16(d)

■ ¶ 38 We conclude that the Hearing Board did not err when it determined that Gilbert did not violate Rule 1.16(d) under the circumstances of this case. The Board first determined that Gilbert was entitled to a portion of her fee in quantum meruit: it specifically found that Gilbert "unquestionably provided legal services" and that Peters received a benefit from Gilbert's services. The Hearing Board further concluded that it would be unjust in light of the parties' intentions and expectations for Peters to retain the benefit of Gilbert's services without paying for them. The Board specifically found that Peters and Henderson understood—and in fact expected—that Gilbert would begin work immediately, and that Peters' email expressly acknowledged that Gilbert was entitled to payment for appearing at the master calendar hearing. It also found that, although Gilbert did not include her hourly rate in the written fee agreement, she showed Peters and Henderson her list of standard fees during their initial meeting, which included her hourly fee. These findings are supported by the record.[11]

¶ 39 The Hearing Board ultimately determined that Gilbert did not violate Rule 1.16(d) by failing to return that portion of the fee to which she was entitled in quantum meruit. We conclude that the Hearing Board did not err in determining that Gilbert did not violate Rule 1.16(d) under the circumstances of this case.

¶ 40 Certainly, Gilbert's dealings with Henderson and Peters warranted disciplinary action. By commingling her clients' advance fee with her own monies, Gilbert violated Colo. RPC 1.15(a), 1.15(c), and 1.5(f), and she was disciplined for these violations. The wiser course would have been for Gilbert

11. The Office of Attorney Regulation Counsel does not contest any of the Hearing Board's findings of fact. Instead, it argues, as discussed above, that Gilbert was required to return the entire advance fee under In re Sather because her flat fee agreement was silent as to how Gilbert would be paid if she was discharged.

to include benchmarks or milestones in the fee agreement [12] and deposit the clients' advance fee in her trust account until earned. Moreover, by upholding the Hearing Board's determination in this case, we do not intend to suggest that attorneys may unilaterally determine what they believe they are owed in quantum meruit. Rather, we simply conclude that the Hearing Board did not err in this case when it determined that Gilbert did not violate Rule 1.16(d) by failing to return that portion of the fee to which she was entitled in quantum meruit.

## IV. Conclusion

¶ 41 We hold that, under the circumstances of this case, Gilbert did not violate Colo. RPC 1.16(d) when she failed to return a portion of the advance fee to which she was entitled under quantum meruit. Accordingly, we affirm the Hearing Board's order.

CHIEF JUSTICE RICE dissents, and JUSTICE COATS and JUSTICE EID join in the dissent.

CHIEF JUSTICE RICE, dissenting.

¶ 42 The majority holds that "Gilbert did not violate [Colorado Rule of Professional Conduct ('RPC')] 1.16(d) by failing to refund the portion of the advance fee to which the Hearing Board determined she was entitled in quantum meruit as compensation for the services she provided before her discharge." Maj. op. ¶ 20. The majority's reasoning is premised on a fundamental misunderstanding of the procedural workings of the equitable remedy of quantum meruit. Quantum meruit is a quasi-contractual doctrine that permits a party to a contract to *recover* the reasonable value of her services if the contract fails. In this case, rather than *recovering* fees not delineated in her written flat-fee contract when her clients terminated her representation, as might be appropriate under quantum meruit, Gilbert *unilaterally withheld* the fees to which she felt she was entitled and then justified her withholding under the guise of quantum meruit.

¶ 43 The majority's holding permits attorneys to unilaterally retain as "earned," in their own business accounts, advance fees that they had *not* earned by the terms of their written agreement simply because they feel that they would win a quantum meruit case. This inverts the procedural structure of quantum meruit and unjustly shifts the burden onto clients who owe nothing under the terms of the agreement to bring an action against the attorney to resolve the status of the disputed funds. Because a determination of what is "earned" in quantum meruit necessarily requires the party seeking recovery to bring an action as a plaintiff and to *prove* what she earned, fees cannot properly be considered "earned" in quantum meruit until they have been adjudicated as such. Here, Gilbert did not bring a claim against her clients and secure a court ruling delineating what she had earned in quantum meruit but rather unilaterally withheld funds that she had not earned by the terms of her written agreement without first obtaining a quantum meruit ruling in her favor. Therefore, I would hold that she violated RPC 1.16(d)'s requirement that she "refund[ ] any advance payment of fee or expense that has not been earned or incurred" upon termination of representation.[1] Because I fear that the majority is doing a disservice to the public by permitting Gilbert's unilateral re-

---

12. Indeed, we recognize that, given the growing prevalence of such fee arrangements, clarifying amendments to Colo. RPC 1.5(f) may be warranted.

1. Gilbert could have complied with RPC 1.16(d) while avoiding the risk that funds returned to her clients and then pursued in quantum meruit would be exhausted prior to recovery simply by complying with the requirement that advance fees be kept in trust. *See* Colo. RPC 1.15(c) (2013) (repealed and readopted in 2014 as Colo. RPC 1.15A(c)) (requiring that attorneys maintain disputed property separately until the dispute is resolved). This rule permits attorneys to keep disputed funds in the trust account until their quantum meruit claim is resolved, and arguably even to immediately deposit into a trust account disputed funds that they failed to hold in trust initially when a client terminates the representation and the attorney feels entitled to quantum meruit. Had Gilbert taken either of these paths, I would agree that she acted in compliance with RPC 1.16(d). But she did neither, choosing instead to simply withhold the funds in her business account and force the client to bring an action against her. RPC 1.16(d) does not permit such behavior.

tention of advance fees under the guise of quantum meruit, I respectfully dissent.

## I. The Relevant Rules of Professional Conduct Contextualized

¶ 44 RPC 1.16(d), in relevant part, requires that "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as ... refunding any advance payment of fee or expense that has not been earned or incurred." Because Gilbert had not previously represented these clients, she was required to communicate, *in writing*, "the basis or rate of the fee and expenses" that she would charge. Colo. RPC 1.5(b). Gilbert's written agreement with her clients simply established a flat rate that she would charge once three distinct tasks had all been completed, only one of which she completed prior to her termination. Despite having no agreement regarding hourly recovery upon termination, Gilbert withheld a portion of her clients' advance fees premised on an hourly rate. Thus, whether Gilbert violated RPC 1.16(d) turns on whether the fees to which she unilaterally determined that she was entitled in quantum meruit—based on an hourly rate that was not incorporated or referenced in her written agreement with her clients—were nonetheless "earned" prior to an adjudicative body determining that she was entitled to them.

¶ 45 Under RPC 1.5(f), "[f]ees are not earned until the lawyer confers a benefit on the client or performs a legal service for the client." But this language is not so clear as the majority makes it seem, *see* maj. op. ¶ 33, as is evidenced by the need for a clarifying Comment regarding flat fees. In the context of an advance lump-sum fee, as is at issue here, Comment 12 to RPC 1.5 clarifies that "the lawyer must deposit an advance of unearned fees in the lawyer's trust account" and "[t]he funds may be earned *only* as the

lawyer performs *specified* legal services or confers benefits on the client *as provided for in the written statement of the basis of the fee*, if a written statement is required by [RPC] 1.5(b)" (emphasis added). Although the majority correctly observes that "the text of each Rule is authoritative" and that "Comments do not add obligations to the rules," these Comments should be given weight as "guides to interpretation," especially where the rule's language is as general as that of 1.5(f). Colo. RPC, Preamble and Scope, ¶¶ 14, 21; *see also* maj. op. ¶ 33.

¶ 46 Additionally, "[t]he standard principles of statutory construction apply to our interpretation of court rules," *In re Marriage of Wiggins*, 2012 CO 44, ¶ 24, 279 P.3d 1, 7, and statutes must be read "as a whole, construing each provision consistently and in harmony with the overall statutory design," *Whitaker v. People*, 48 P.3d 555, 558 (Colo. 2002). The overarching purpose of RPC 1.5 is to require lawyers to establish clear, reasonable fee agreements with their clients, and in this context, RPC 1.5(f) clarifies that advance fees are not the property of the attorney immediately, but rather only once the attorney performs the work for which the fees were advanced under the agreement. *See* RPC 1.5. Therefore, 1.5(f) must be read in the greater context of 1.5's regulation of fee agreements, and as its related regulations and Comment 12 amply demonstrate, 1.5(f)'s definition of "earned" is limited to fees contemplated by the fee agreement.[2] Furthermore, as I will demonstrate, fees in quantum meruit cannot properly be considered "earned" until they are adjudicated as such.

## II. Quantum Meruit Permits Recovery, Not Retention

¶ 47 Although an attorney may generally recover the reasonable value of work done when the agreement underlying that work fails, this must be done by filing a claim

---

**2.** Of more pragmatic concern, under the majority's broad reading of RPC 1.5(f), an attorney who is advanced fees under a written flat-fee agreement can remove funds from that advance for any work that the attorney feels relates to the completion of the agreed-upon task, regardless of the efficiency or necessity of the tasks performed—or theoretically even for work that ben-

efits the client but is wholly unrelated to the agreed-upon task—and then unilaterally retain them upon termination under quantum meruit. This possibility highlights the need to reference the written terms of an agreement when determining whether an attorney "earned" advance fees under 1.5(f).

against the client and obtaining a judgment finding that the fees were earned in quantum meruit, which Gilbert failed to do. The majority repeatedly states that Gilbert did not violate 1.16(d)'s prohibition against retaining advance fees that have not been earned upon termination because she was "entitled" to those fees in quantum meruit. Maj. op. ¶¶ 20, 27, 41. But Gilbert did not earn fees in quantum meruit simply by saying she did; rather, she earned them only when she proved that she was entitled to them in quantum meruit before the Hearing Board. At the time she initially retained these fees, they were disputed, and Gilbert should have either returned them or placed them in trust and then sought recovery under quantum meruit through litigation. Therefore, since Gilbert did not return all of her clients' advanced and unearned fees until at least thirteen months after her termination,[3] she violated RPC 1.16(d)'s requirement that she timely return any advance fees that had "not been earned" upon termination. Colo. RPC 1.16(d); *see also In re Sather,* 3 P.3d 403, 415 (Colo.2000).

¶ 48 Quantum meruit permits an attorney to recover through litigation fees for the reasonable value of services provided when a contract fails, either from the client or from an appropriately established trust fund in which disputed funds are kept, *see Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.,* 2012 CO 61, ¶ 19, 287 P.3d 842, 847—not to unilaterally withhold or retain such funds in their own accounts. Black's Law Dictionary alternately defines "recovery" as "[t]he obtainment of a right to something (esp. damages) *by a judgment or decree*" and "[a]n amount awarded in or collected *from a judgment or decree."* *Black's Law Dictionary* 1466 (10th ed.2014) (emphasis added). Here, however, Gilbert improperly relied on quantum meruit to justify her unilateral withholding of her clients' advanced and unearned fees with no adjudication and no basis in her written fee agreement. This interpretation inverts the doctrine. Quantum meruit is not an affirmative

defense against wrongful withholding of a client's funds upon termination. Rather, it provides an equitable cause of action for attorneys (and others) to seek compensation for work performed when the contract underlying that work fails. *Melat,* ¶ 19, 287 P.3d at 847.

¶ 49 Our recent discussion of quantum meruit in *Melat* highlights this distinction:

Quantum meruit is an equitable theory of *recovery* that arises out of the need to avoid unjust enrichment to a party in the absence of an actual agreement to pay for services rendered. Quantum meruit *allows a party to recover* the reasonable value of the services provided when the parties either have no express contract or have abrogated it. *To recover* in quantum meruit, *a plaintiff must demonstrate* that (1) at plaintiff's expense, (2) defendant received a benefit, (3) under circumstances that would make it unjust for the defendant to retain the benefit without paying. Whether retention of the benefit is unjust is a *fact-intensive inquiry* in which *courts* look to, among other things, the intentions, expectations, and behavior of the parties.

*Id.* (emphasis added) (citations omitted). Thus, proper application of the theory in the context of an attorney-client dispute requires that the attorney either return the unearned funds to the client or maintain the disputed funds in a neutral trust account, *see* Colo. RPC 1.15(c), 1.16(d), then seek to recover those funds by satisfying the three-prong test before a court, *Melat,* ¶ 19, 287 P.3d at 847.

¶ 50 Crucially, the burden to prove that funds have been earned under quantum meruit falls upon the attorney. But in this case, Gilbert never pursued recovery in quantum meruit. Rather, under the guise of quantum meruit, she simply withheld—in her own business account—her clients' advance fees that she had not earned upon termination under the written agreement, and she then claimed quantum meruit as a defense against charges that she failed to return unearned fees as required by RPC 1.16(d). Such a

---

**3.** The Hearing Board's undisputed findings of fact indicate that Gilbert obtained the court order granting her motion to withdraw by December 26, 2011—the latest point at which her representation could be considered fully terminated—and she did not return the full advance fees until February 11, 2013.

reversal of the burden of proof under quantum meruit is not supported by our precedent, and by allowing Gilbert to unilaterally declare fees as "earned" in quantum meruit, the majority inverts the doctrine and destroys the procedural foundations upon which quantum meruit is erected. More importantly, the majority's approval of Gilbert's retention of these funds both grants attorneys unprecedented power over the advance fees of their clients and unjustifiably burdens those clients with the need to then seek recovery of funds that no one but the attorney herself has deemed "earned." This result strains the term "earned" to its breaking point and erodes an attorney's duties to her client as a fiduciary.

¶ 51 In fact, the concept of an attorney's need to actively seek recovery under quantum meruit is so ingrained in the doctrine that it explicitly underpins every case to which the majority cites except *People v. Johnson*, 199 Colo. 248, 612 P.2d 1097 (1980) (addressed *infra* Part III). *See LaFond v. Sweeney*, 2015 CO 3, ¶ 27, 343 P.3d 939 ("[A] quantum meruit *recovery* action vis-á-vis the client never properly arose in this case. The underlying basis for applying this equitable doctrine regarding fee *recovery* is absent here." (emphasis added)); *Melat*, ¶ 20, 287 P.3d at 847 ("In the context of the attorney-client relationship, an attorney who withdraws before the close of a case may generally *recover* the reasonable value of his or her services under a quantum meruit theory." (emphasis added)); *Mullens v. Hansel–Henderson*, 65 P.3d 992, 995 (Colo.2002) ("Generally attorneys may *recover* on an unenforceable contract on the basis of quantum meruit." (emphasis added)); *Dudding v. Norton Frickey & Assocs.*, 11 P.3d 441, 446 (Colo.2000) ("We have permitted quantum

meruit *recovery* in the context of a non-contingent attorney-client contract when an attorney withdraws for a justifiable reason or a client terminates the attorney without cause." (emphasis added)); *Sather*, 3 P.3d at 409–10 ("Upon discharge, the attorney *must return all unearned fees* in a timely manner, *even though* the attorney may be entitled to quantum meruit *recovery* for the services that the attorney rendered and for costs incurred on behalf of the client." (emphasis added)); *Olsen & Brown v. City of Englewood*, 889 P.2d 673, 675 (Colo.1995) ("There is no question that an attorney who withdraws for a justifiable reason or is terminated by a client without cause is entitled to compensation for services rendered. Generally, courts are in agreement that *quantum meruit* is an appropriate measure of *recovery* in such circumstances." (second emphasis added) (citation omitted)); *Elliott v. Joyce*, 889 P.2d 43, 44 (Colo.1994) ("After the matter was settled, Elliott filed an attorney's lien ... *seeking recovery* of attorney fees ... based on time and effort for services rendered, under the theory of *quantum meruit* .... [T]he trial court accepted 'the proceeds of the settlement ... *to be held by the court* until James Elliott's attorney's lien question is resolved.'" (first and third emphases added)). As these quotations illustrate, quantum meruit is a theory of recovery, and thus attorneys must seek and be granted recovery in a court before such fees can be properly considered "earned."

¶ 52 Furthermore, these quotes are mere examples—the majority of these cases refer to recovery dozens of times, and none refers to withholding funds under the doctrine or to an attorney being permitted to retain funds under the flag of quantum meruit.[4] Even

---

4. The court in *Melat* does refer to "the conduct of Merat [sic] and Howarth in unjustly retaining all of the recovered attorney fees," ¶ 38, 287 P.3d at 851, but Melat and Howarth were the original *defendant* firms in the underlying quantum meruit suit in which the Hannon Law Firm sought recovery of fees that it felt it had earned as withdrawn co-counsel in quantum meruit, *see id.* at ¶¶ 1–3, 287 P.3d at 844.

Similarly, the *Mullens* court upheld a trial court decision allowing "Mullens to retain fees under quantum meruit." 65 P.3d at 994. In that case, however, the trial court found that Mullens did

have an oral agreement for a forty-percent contingency on a bad faith claim, under which he kept his portion of the settlement, but that the agreement was unenforceable under Chapter 23.3's requirement that all contingency agreements be reduced to writing. *Id.* The court then determined that the amount kept by Mullens under the unenforceable agreement was earned in quantum meruit, so rather than require Mullens to return the fees to his client only to have the client immediately pass the funds back to Mullens under quantum meruit, the court simply allowed Mullens to "retain" the fees. *Id.* This

the majority itself acknowledges multiple times that an attorney must *recover* fees in quantum meruit, *see* maj. op. ¶¶ 20–27, 37, but it nevertheless converts this affirmative cause of action into a defense against accusations of wrongfully withholding a client's advance fees, *see id.* at ¶¶ 20, 38–39. In transforming the potential availability of quantum meruit recovery into the right to unilaterally retain advance fees when a written contract fails, the majority relies heavily on misreadings of *Sather* and *Johnson.* I will now demonstrate that these authorities do not mandate the majority's conclusion.

### III. *Sather* and *Johnson* Support Returning Fees

¶ 53 In *Sather,* in a line that should resolve this case, the court holds that "[u]pon discharge, the attorney *must return all unearned fees* in a timely manner, *even though the attorney may be entitled to quantum meruit recovery* for the services that the attorney rendered and for costs incurred on behalf of the client." 3 P.3d at 409–10 (emphasis added) (citing Colo. RPC 1.16(d)). While we also held that "an attorney earns fees by conferring a benefit on or performing a legal service for the client," this holding was intended to bolster the conclusion that the attorney violated RPC 1.15 by labeling advance fees as "non-refundable" and putting them directly into his account rather than maintaining them in trust. *Id.* at 405. As we observed, requiring that funds be kept in trust "protects the client's right to discharge an attorney." *Id.* at 409 (citing Colo. RPC 1.16(d) cmt.). Thus, *Sather* confirms that fees earned "by conferring a benefit on or performing a legal service for" a client do not include fees that could potentially be recovered in quantum meruit—at least not before the fees have actually been recovered through litigation. *See id.* at 410.

¶ 54 The majority disregards this plain reading of *Sather.* Initially, it ignores the interrelationship between the rules at issue and dismisses this clear language prohibiting Gilbert's behavior as relating only to "a separate part of the opinion discussing an attor-

ney's obligation under [RPC] 1.15(f) to maintain advance fees in a separate trust account until the fees are earned." Maj. op. ¶ 32. Thus, the majority concludes, this plain language citing 1.16(d) is meaningless when considering an attorney's duties under 1.16(d). Instead, the majority focuses on the fact that we sanctioned the attorney in *Sather* for failing to return the *unearned* portion of his fees, as is prohibited by 1.16(d), and infers that this ruling "implicitly recognized that the attorney 'earned' and rightfully retained" some portion of the funds in quantum meruit "even though nothing in the opinion suggested that his 'non-refundable' flat fee agreement provided for quantum meruit recovery (or an hourly fee) upon early termination." *Id.* at ¶ 30. To the majority, the fact that we did not "require the attorney to refund all advance fee payments and then separately seek quantum meruit recovery from his former client" means that we considered quantum meruit fees to have been earned at the moment the attorney decided he should be entitled to them. *See id.* at ¶ 32.

¶ 55 The majority infers too much. In *Sather,* the court simply took the term "unearned" from the language of 1.16(d), and since the court determined that the attorney *did* violate 1.16(d) because some portion of the fees retained as "nonrefundable" was clearly unrecoverable under either quantum meruit or contract, 3 P.3d at 407, 415, the court had no reason to reach the question of whether an attorney violates 1.16(d) by keeping funds in her own account as "earned" under quantum meruit before the funds were adjudicated as such. Additionally, the attorney retained these fees not under the guise of quantum meruit but rather under an unenforceable "non-refundable" fee agreement, and the Hearing Board then validated a portion of the funds as deserved under quantum meruit. *See id.* at 407–08. The mere fact that the court did not then perform the legal fiction of requiring the attorney to return all the advance fees and then immediately requiring the client to return the funds that the board had adjudicated as deserved in quantum meruit merely reflects judicial efficien-

---

judicial economy is significantly different from the case at hand, in which Gilbert unilaterally

declared herself entitled to funds with no purported contractual basis and no adjudication.

cy—it does not destroy the clear language of this case recognizing that an attorney must return advance fees and then pursue recovery in quantum meruit if she so chooses. Hence, the majority's reading of *Sather* misconstrues the holding to elevate what are at best dicta and at worst unsubstantiated inferences to the status of a substantive holding. In doing so, it ignores the plain language of the holding that directly prohibits the exact misfeasance that Gilbert committed.

¶ 56 Similarly, *Johnson* never actually holds that an attorney has a right to retain funds under quantum meruit simply because she feels that she earned them. In that case, an attorney entered into an oral agreement to represent a criminal defendant and received an advance payment of $1500 before the client terminated representation. *Johnson*, 612 P.2d at 1098. Because there was no written agreement and no agreement regarding what would happen in the event of early termination, the court determined that the "fee arrangement by necessity was upon a quantum meruit basis." *Id.* The court then agreed with a grievance committee determination that the attorney "expended no more than 8 or 9 hours on the case" and that the attorney was therefore "entitled on a quantum meruit basis to $500 and that a refund of $1000" was due to his client. *Id.* at 1099. Notably, this case did not address the procedural requirements of quantum meruit but rather allowed the attorney to retain $500 in quantum meruit of the $1500 advance payment he had been withholding after his client terminated him. Because the attorney failed "to return that portion of the $1500 payment which was unearned," the court found that he violated DR–2–110(A)(3), which was an older iteration of RPC 1.16(d) and required "the prompt refund of unearned parts of a fee when a lawyer withdraws from employment." *Id.; see also* Canon 2 of Colorado Disciplinary Rules, DR 2–110(A)(3) (Withdrawal from Employment) (adopted and effective Mar. 18, 1976).

¶ 57 The majority reads this as impliedly finding that the attorney did not violate DR 2–110(A)(3) by retaining funds that he was eventually deemed to have earned in quantum meruit by the court. *See* maj. op. ¶¶ 28, 32. Much like in *Sather*, however, the *Johnson* court never held that the attorney at issue was permitted to make his own determination regarding his entitlement to retain advance fees under quantum meruit; rather, it held that he *did* violate DR–2–110(A)(3) by *not* returning the portion of the funds that the court deemed unearned. *Johnson*, 612 P.2d at 1099. Hence, the court simply ruled that DR 2–110(A)(3) forbade retaining unearned fees, and since some of the fees were clearly unearned, the attorney violated the rule.

¶ 58 Moreover, even if this case is read to have affirmatively approved of the attorney's retention of fees because his unspoken agreement "by necessity was upon a quantum meruit basis," *see id.* at 1098, this ruling was made *before* attorneys were required to reduce fee arrangements with new clients to writing under RPC 1.5(b). *Compare* Colo. RPC 1.5(b) (titled "Fees" and requiring that the basis and rate of fees are communicated to clients that the attorney has not represented regularly in writing), *with* Canon 2 of Colorado Disciplinary Rules, DR 2–106 (Fees for Legal Services) (reciting the then-existing fee regulations and mirroring RPC 1.5(a)'s prohibition on excessive fees, but never prohibiting oral fee agreements regardless of the attorney's prior business relations with the client). Therefore, this reading of *Johnson's* holding does not comport with the current iteration of the rules requiring that attorneys communicate "the basis or rate of the fee ... to the client, in writing." Colo. RPC 1.5(b). Thus, even if the court intended to affirmatively endorse retention of fees under the flag of a silent oral agreement regarding quantum meruit, the rules of professional conduct have evolved significantly since this case was decided, rendering the court's logic obsolete.

¶ 59 In sum, neither *Sather* nor *Johnson* had any reason to reach the question of whether unilateral retention of the portion of fees that the court eventually deemed earned in quantum meruit also violated the rule. That question was not essential to the resolution of either case. Furthermore, the majority's contention that it "would be a waste of resources in these circumstances to force

attorneys to return money to which they are entitled and then bring suit against the client to recover it" misses the point. Maj. op. ¶ 32. It would absolutely be a waste of resources for the hearing boards in *Sather* and *Johnson*—which had already determined that an attorney improperly retained advance fees but was entitled to a portion of the advance fees in quantum meruit—to then require the parties to perform the legal fiction of "exchanging" those funds that the boards deemed earned. But this is only true *after* a hearing board has already made the quantum meruit determination. It is by no means a waste of judicial resources for an attorney to be required to prove her quantum meruit case before keeping the funds in quantum meruit. Presiding over such litigation is exactly what the judiciary does, and the majority's alternative of requiring clients to sue their attorneys will both consume the same judicial resources and unjustly burden clients.

### IV. Conclusion

¶ 60 The majority's assertion that viewing Gilbert's misfeasance here as a violation of RPC 1.16(d) would effectively foreclose the remedy of quantum meruit in cases where flat-fee contracts fail misunderstands Regulation Counsel's central contention. *See* maj. op. ¶ 34. Regulation Counsel does not contend that attorneys *cannot* recover in quantum meruit when a flat-fee agreement fails, but rather that they *must* recover in quantum meruit before such fees can be considered "earned." [5] Instead, the majority permits Gilbert and similarly situated attorneys to put the cart before the horse and declare fees as earned under quantum meruit when no quantum meruit proceedings have been held. In so doing, the majority misses the overarching point of this case.

¶ 61 This case is not about whether Gilbert was entitled to *recover* in quantum meruit had she followed the proper procedure. I take issue not with the Hearing Board's

eventual determination that Gilbert proved the elements of quantum meruit, but with Gilbert retaining the fees under the guise of quantum meruit before the Board considered her claim. Nor is it about punishment. Gilbert does not contest the punishment that she received for her other rule violations, and Regulation Counsel did not request any additional punishment had we held that Gilbert violated RPC 1.16(d). Rather, this case is about whether an attorney is entitled under RPC 1.16(d) to *retain* fees in her own business account to which she unilaterally determined that she was entitled without any basis in her written agreement with her client and without a court order granting her those fees in quantum meruit. I would hold that an attorney is not so entitled. To deem fees "earned" when an attorney believes she has a viable claim in quantum meruit turns the doctrine on its head, and had Gilbert's clients not pursued their claim, no legal determination would ever have been made regarding whether these fees were earned under quantum meruit or not.

¶ 62 The majority insists that, in holding that Gilbert did not violate RPC 1.16(d), it does "not intend to suggest that attorneys may unilaterally determine what they believe they are owed in quantum meruit." Maj. op. ¶ 40. But that question is precisely what this case is about. If Gilbert was allowed to unilaterally retain fees as "earned" in quantum meruit prior to a court considering the question, then she did not violate RPC 1.16(d); if fees in quantum meruit are not earned until they are adjudicated as such, then Gilbert retained unearned fees and violated 1.16(d). Therefore, by determining that Gilbert did not violate 1.16(d), the majority necessarily holds that 1.16(d) permits attorneys to unilaterally withhold advance fees under quantum meruit based solely on their own estimations of their entitlement—at least in cases such as this where a hearing board eventually agrees with the attorneys' prior unilateral determinations. The majori-

---

5. Regulation Counsel's contention that attorneys do not "earn" a portion of flat-fee agreements merely by "conferring a benefit on or performing a legal service for the client" relates only to earned fees in the context of RPC 1.16(d). Regulation Counsel concedes that Gilbert would have

been permitted to "return the entire advance fee and then separately seek quantum meruit recovery against her former clients if she wished," maj. op. ¶ 18, and deciding that Gilbert violated 1.16(d) would in no way eliminate quantum meruit as a remedy in failed flat-fee agreements.

ty's holding will only operate to encourage attorney overreach and proportionally increase client allegations under RPC 1.16(d). Therefore, because the majority's holding will disserve the public, I respectfully dissent.

I am authorized to state that JUSTICE COATS and JUSTICE EID join in this dissent.