In Re: Plaintiff: The PEOPLE
of the State of Colorado,

v.

Defendant: David G. FRISCO.

No. 05SA17.

Supreme Court of Colorado,
En Banc.

Sept. 12, 2005.

Larry R. Abrahamson, District Attorney, Loren B. Schall, Deputy District Attorney, Fort Collins, for Plaintiff.

Joseph Saint–Veltri, Denver, for Defendant.

COATS, Justice.

David Frisco, a criminal defendant charged in a multi-count grand jury indictment, petitioned pursuant to C.A.R. 21 for relief from the district court's pre-trial order disqualifying his chosen attorney. The district court ruled that disqualification was required by Rule 1.9(a) of the Colorado Rules of Professional Conduct because the defendant's attorney did not have the consent of a former client, who was both an alleged co-conspirator and prospective prosecution witness, and whose expected testimony the defense would be forced to challenge and characterize as blame shifting.

Because it was not reasonable to find, from the available record, a substantial risk that confidential information as would normally have been obtained by counsel in the prior representation would materially advance the position of the defendant in the current prosecution, Rule 1.9 imposed no duty on defense counsel to obtain his former client's consent. The rule is therefore made absolute.

### I.

In April 2004, the defendant, David Frisco, was indicted by the state-wide grand jury on multiple counts of theft; theft by receiving; forgery; criminal impersonation; attempt to influence a public servant; second degree perjury; possession, conspiracy to distribute, and distribution of schedule II controlled substances; false imprisonment; solicitation for prostitution; possession of a forged instrument, explosives, and hazardous substances; being an accessory to a crime; and engaging in racketeering activities in violation of the Colorado Organized Crime Control Act. Prior to trial, the People moved to disqualify Frisco's counsel,[1] on the ground that his former representation of a prospective prosecution witness, Dean Mangeris, created a conflict of interest, which had not been waived by the former client. Following the arguments of counsel, the district court granted the motion.

Frisco's counsel had represented Mangeris for some months, beginning in early 2003, against charges of manufacturing and con-

spiring with a third person to manufacture methamphetamine over a three-day period in September 2002. The representation appears to have consisted largely of arranging for Mangeris' continued release on bond, which ended when Mangeris failed to appear for a hearing in March and was arrested in California in April. Mangeris was returned to Colorado in May and, in June, testified before the grand jury about criminal activities involving Frisco. As part of a broader plea agreement, the drug charges with regard to which he had been represented by Frisco's counsel were dismissed in July. It is undisputed that Frisco's counsel withdrew from representation of Mangeris immediately upon Mangeris' capture and return to the state, and that he had no involvement in Mangeris' cooperation with the government or his subsequent plea arrangement.

As relevant to Mangeris' drug activities, the grand jury indictment indicated that between June 2002 and July 2003, Frisco was aware of Mangeris' drug manufacturing activities, provided him materials and instructions, and took a share of the drugs. In moving for disqualification, the People emphasized that Mangeris' testimony at trial would not only implicate Frisco in the distribution and manufacture of drugs, as charged in the indictment, but also that Mangeris manufactured methamphetamine for Frisco as payment for posting the very bond that had been arranged with the assistance of Frisco's attorney. There was no suggestion, however, that defense counsel participated in or was aware of any such illegal arrangements.

The district court granted the motion to disqualify, solely on the ground that Rule 1.9(a) of the Colorado Rules of Professional Conduct imposed a duty on Frisco's counsel to obtain the consent of his former client. The court found the current case substantially related to counsel's former representation of Mangeris (as well as some of Mangeris' other prosecutions) because both involved controlled substances and, without greater elaboration, because of "the facts and circumstances" that would be at issue in the current

1. The pleading filed by the People was actually entitled, "Notice of Attorney Conflict." The court permitted the People to move for disqualification orally, and over the objection of defense counsel, it granted their motion.

case. It also found that Frisco's defense would be materially adverse to the interests of Mangeris, whether or not he testified and was subjected to cross-examination, because it would necessarily involve characterizing him as a liar, as a person who had committed multiple crimes, and as a person trying to shift the blame for his own conduct.

Frisco petitioned for relief pursuant to C.A.R. 21.

## II.

■ The Sixth Amendment right of criminal defendants to counsel of their choice is not absolute and must give way under certain circumstances. *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). In addition to protecting the rights of the defendant and ensuring that their own judgments remain intact on appeal, courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them. *See id.* at 159–60, 108 S.Ct. 1692. Even an otherwise effective waiver of conflict-free representation is therefore not always sufficient to permit representation by a defendant's counsel of choice. *See id.*

■ There can be no doubt that a court may decline a proffer of waiver in the face of an actual conflict of interest, *id.* at 162, 108 S.Ct. 1692, but in order to fully protect the various interests at stake in a timely manner, courts must also be able to decline such a waiver upon a mere showing of serious potential for conflict, *id.* at 164, 108 S.Ct. 1692; *see also Rodriguez v. Dist. Court*, 719 P.2d 699 (Colo.1986). As this court has previously

made clear, however, where the court's concern is protecting the interests of former clients rather than protecting the defendant, avoiding mistrial or reversal from later-materializing actual conflicts, or undermining public confidence in the impartiality and fairness of the process, a defendant's choice of counsel will not lightly be denied. *See Rodriguez*, 719 P.2d at 706–08.

In *Rodriguez v. District Court*, while recognizing defense counsel's obligation under the Canons of Professional Responsibility to preserve the confidences of a former client, we held that at least where the former client (and prospective witness against the defendant) did not join the prosecution's motion to disqualify, and where there also appeared to be unprivileged materials available for impeachment, the former client's interests could be adequately protected by the vigilance of the trial court. On balance, therefore, a presumption in favor of the defendant's choice of counsel was not overcome. *Id.* at 707–08.

Since that time, however, the Canons of Professional Responsibility have been superceded, in this jurisdiction, by the Colorado Rules of Professional Conduct. The Rules continue to limit attorneys in using or revealing information relating to a prior representation, but unlike the Canons, Rule 1.9(a) actually bars subsequent representation, under limited circumstances, without a former client's consent. *See* C.R.P.C. 1.9 (2004) (Conflict of Interest: Former Client);[2] *see also People ex rel. Peters v. Dist. Court*, 951 P.2d 926, 931–33 (Colo.1998) (applying Rule 1.9(a), in conjunction with 1.7 and 1.10, to disqualify criminal defense counsel).

2. Rule 1.9 reads:
  (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.
  (b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented the client,
    (1) whose interests are materially adverse to that person; and
    (2) about whom the lawyer had acquired information protected by Rule 1.6 that is

material to the matter; unless the former client consents after consultation.
  (c) A lawyer who has formally represented a client in a matter or whose present or former law firm has formerly represented a client in a matter shall not thereafter:
    (1) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client, or when the information has become generally known; or
    (2) reveal information relating to the representation except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client.

■ The rule obviously does not require the consent of a former client to all future representation but only to the representation of "another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client." Because the use of information from a prior representation to the disadvantage of the former client is separately restricted by Rule 1.9(c), Rule 1.9(a) applies only to situations involving an inherent and substantial risk of violating an attorney's duty of loyalty to former clients. Its prohibition is therefore limited to representations that combine the same or substantially related legal disputes with a motive to harm a former client, in order to advance the interests of a current client.

■ Unless both matters involve the same transaction or legal dispute, they are considered "substantially related" only if there is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter. *See* Model Rules of Professional Conduct Rule 1.9 cmt. 3 (2002); *see also Analytica, Inc. v. NPD Research, Inc.,* 708 F.2d 1263, 1266 (7th Cir.1983); *Koch v. Koch Indus.,* 798 F.Supp. 1525, 1536 (D.Kan. 1992); *see generally* Restatement (Third) of The Law Governing Lawyers § 132 cmt. d(iii) (2000). Any meaningful assessment of this risk cannot be limited to the consideration of ultimate legal issues, but must account for facts and circumstances, legal theories and strategies, and even the nature and scope of the attorney's involvement in the former representation.

Although there appears to be no clear consensus about precisely how the "substantial relationship" test should be applied without simultaneously exposing the very matters to be protected, *see generally* ABA/BNA Lawyers' Manual on Professional Conduct 51:223–25 (2002), assessing whether the two representations are "substantially related" has been described as a process of factual reconstruction, *see Westinghouse Elec. Corp. v. Gulf Oil Corp.,* 588 F.2d 221, 225 (7th Cir.1978); *see generally* Charles W. Wolfram, *Symposium: Restatement of the Law Governing Lawyers,* 10 Geo. J. Legal Ethics 677 (Summer 1997). It necessarily entails some consideration of the likelihood that the attorney would have been exposed to confidential client information relevant to the prior matter, as well as the likelihood that such confidential material will be relevant to the later representation. *Westinghouse,* 588 F.2d at 225. Unless both cases involve an identical legal dispute or the same factual events, making it obvious that matters relevant to both would normally have been discussed in the earlier representation, evaluating the relationship between the representations will therefore generally require some factual inquiry and the identification of confidential factual information that would normally be obtained in the former representation and disadvantage the former client in the current representation.

Current clients are protected from conflicts of interest by other provisions of the rules. *See, e.g.,* C.R.C.P. 1.7 (Conflict of Interest: General Rule) and 1.8 (Conflict of Interest: Prohibited Transactions). And courts clearly have the responsibility to ensure that a criminal defendant receives a fair trial (even where that requires disqualification of his counsel of choice), as well as the latitude to ensure the integrity, and appearance of integrity, of the process. With regard to Rule 1.9(a)'s specific protection of the interests of former clients, however, adversity of interests between former and current clients, standing alone, is insufficient to justify disqualification of counsel. The sweeping disqualification remedy of C.R.P.C. 1.9(a) applies only upon the identification of confidential factual information that would normally have been obtained in a former representation and would also materially advance the adverse interests of a client in a subsequent matter.

### III.

■ In disqualifying Frisco's counsel, the district court relied exclusively on Rule 1.9(a).[3] While it made clear its reasons for

---

3. Although the former client, Mangeris, neither moved nor joined the People's motion to disqualify, the issue of standing has not been raised, and we do not address it. We note, however, that a number of other courts appear to hold that courts do not disqualify an attorney on the

finding the interests of Mangeris and those of Frisco to be adverse, the district court was much less specific about its reasons for considering the two representations substantially related. Although the cases did not involve the same transaction or legal dispute and Frisco's counsel clearly played a limited role in defending Mangeris, the district court took no evidence and made no attempt to identify specific confidential factual information that would typically have been acquired in the former representation, much less how such information would have been relevant to advancing Frisco's interests in the current prosecution.

Nor is it readily apparent from the charges in the two prosecutions or from the People's representations about Mangeris' prospective testimony that relevant confidential information would normally have been acquired by Frisco's counsel. Counsel's former representation of Mangeris did not involve the same offenses with which Frisco is currently charged, or even offenses allegedly committed in coordination with or at the direction of Frisco. Although the transaction with which Mangeris was formerly charged allegedly occurred during a broader time period in which he claimed involvement in criminal enterprises with Frisco, the charges involved a particular conspiracy, with a third person altogether, over a specific three-day period. Without more, it is not at all apparent why Mangeris would normally be expected to have divulged confidential factual information relevant to Frisco's defense of the current charges.

Rather, both the People and the district court relied heavily on the relationship between Frisco and Mangeris at the time of the earlier prosecution, and Mangeris' assertion that he committed other crimes in exchange for which Frisco paid him by posting his bond. While it seems clear that the defendant would have an interest in disproving those allegations, it is not at all clear that Mangeris would normally have disclosed to his counsel confidential information about such unrelated crimes. Such an inference would be tenuous, even if Frisco's counsel had actually defended Mangeris against

these unrelated drug charges; it is especially tenuous in light of counsel's unchallenged assertions that his representation consisted of nothing more than arranging for the continuation of Mangeris' bond.

Our holding in this case does not imply that an order of disqualification pursuant to Rule 1.9(a) must be supported by the express identification of such confidential factual information, in every case. We have previously found a substantial relationship, sufficient for the purposes of Rule 1.9(a), where defense counsel offered to present evidence implicating a former client as an alternate suspect in a prosecution for murder, where the murder victim had informed against the client in the prior representation, only to be killed days after his arrest and before she could testify against him. *See Peters*, 951 P.2d 926 (finding disqualification proper on several alternate grounds). Although unarticulated, the clear implication of that opinion was that in light of the victim's role in the former prosecution and the timing of her death, it would have been normal for the former client to disclose confidential factual information to his counsel that could prove simultaneously advantageous in defending his new client and adverse to the interests of his former client.

Here, no similar inference is available from the charges or representations of the parties. In light of the motion to disqualify and the court's brief explanation of its order, it is not even clear that the district court correctly applied the substantial relationship test to require an evaluation of the likelihood that counsel acquired relevant confidential factual information in the prior representation. Whatever might have been the merits of disqualification for the protection of the defendant himself, to avoid mistrial or reversal, or even to maintain the appearance of fairness, the record before us is insufficient to justify disqualification of the defendant's counsel of choice solely to prevent him from violating a duty of loyalty to a former client.

---

grounds of conflict of interest unless the former client moves for disqualification. *See, e.g., Daniels v. State,* 17 P.3d 75 (Alaska App.2001) (analyzing Rule 1.9(a) and relying particularly on

*United States v. Rogers,* 9 F.3d 1025, 1031 (2d Cir.1993) and *In re Yarn Processing Patent Validity Litig.,* 530 F.2d 83, 88 (5th Cir.1976)).

## IV.

Because the available record does not support the finding of a substantial risk that confidential factual information as would normally have been obtained by defense counsel in the prior representation would materially advance the position of the defendant in this prosecution, the district court abused its discretion in finding that C.R.P.C. 1.9(a) imposed a duty upon counsel to obtain his former client's consent and in ordering disqualification. Our Rule is therefore made absolute.

