In re: In the Matter of the ESTATE OF Thorvald G. MYERS

Petitioners: Donald Myers and Olsen & Traeger, LLP,

v.

Respondent: Marion Porter.

No. 05SA231.

Supreme Court of Colorado, En Banc.

Feb. 21, 2006.

As Modified on Denial of Rehearing April 3, 2006.

Olsen & Traeger, LLP, M. Kent Olsen, Douglas J. Traeger, Andrea N. Mahoney, Denver, for Petitioner Donald Myers.

McConnell Siderius Fleischner Houghtaling & Craigmile, LLC, Cecelia A. Fleischner, Troy Rackham, Denver, for Petitioner Olsen & Traeger, LLP.

Holland & Hart, LLP, Stephen G. Masciocchi, Sheldon H. Smith, Kelly Dickson Cooper, Denver, for Respondent Marion Porter.

COATS, Justice.

Donald Myers and the law firm of Olsen & Traeger, LLP, which represents Myers in probate proceedings concerning the estate of Thorvald G. Myers, petitioned pursuant to C.A.R. 21 for relief from an order of the probate court disqualifying the firm from further representation and entering a protective order in favor of Marian Porter. The probate court imposed sanctions and ordered attorney fees in response to Porter's motion alleging that the firm had surreptitiously obtained her consumer credit report in violation of federal and state law. Because the orders of the probate court are not supported with sufficient specificity in the record, the rule is made absolute.

## I.

The disputed orders of the probate court arise from combined proceedings involving the estate of Thorvald G. Myers, who died on October 9, 2004. Marion Porter filed a petition for the formal probate of a will executed by the decedent in 2001. Donald Myers, the decedent's nephew, objected and, in addition, filed a complaint to set aside a 2001 amendment to the decedent's revocable trust, which purported to replace him as successor trustee, with Porter. Myers has alleged that the decedent was unduly influenced by Porter and lacked testamentary capacity when he executed the 2001 will and amendment to his revocable trust, as well as a power of attorney designating Porter. Myers separately filed a petition for the formal probate of a will executed by the decedent in 1994, naming him as personal representative, to which Porter objected.

The probate court ordered consolidation of the will contest proceedings and the trust action in March 2005. In May, Porter moved for dismissal of Myers' actions or for protective orders, alleging that a paralegal acting on behalf of the law firm representing Myers, Olsen & Traeger LLP, had unlawfully obtained a copy of Porter's credit report. In her reply to Myers' response in opposition, Porter also suggested disqualification as an appropriate sanction. In connection with these pleadings, the parties submitted written correspondence, an affidavit executed by the paralegal, Traeger's answers to interrogatories, and part of a transcript of a deposition of Donald Myers.

It appears to have been uncontested that a paralegal, paid by Olsen & Traeger for work on Myers' case, obtained a copy of Porter's credit report through a ruse, with the assistance of a mortgage broker whose wife worked in an office-sharing arrangement with Olsen & Traeger; and that the paralegal had first consulted lawyers and staff in the office about the usefulness of such a report. Traeger conceded that upon learning of the report's existence, he sealed and retained it, awaiting direction from the court, but denied allegations that the actions of the paralegal reflected the firm's normal practice; that the paralegal was directed to obtain the report by either Olsen or Traeger; or that the report had been viewed by Donald Myers or any lawyer in the firm. Trae-

ger refused to admit or deny the allegation that the paralegal discussed the contents of the report with Myers, asserting attorney-client privilege.

Without taking testimony or resolving factual disputes about the knowledge of the attorneys or extent of the involvement of the law firm, the probate court disqualified the entire firm from further representation of Myers. It simultaneously entered an order "in the nature of a protective order," limiting all future discovery as to Marion Porter "to her actions with respect to the decedent's capacity in the years 2000–2001 and her actions with respect to the preparation of the 2001 testamentary documents;" and it awarded Porter $5,000 in fees and costs from Olsen & Traeger. In support of its disqualification order, the court noted only that: "(1) there ha[d] been abuse of the litigation process, (2) it [was] not possible to separate the law firm of Olsen & Traeger from the abuse and to rectify the wrong, and (3) untainted counsel [could] and should proceed with the representation of Donald Myers." In support of its protective order, the court offered, in addition, that "it [was] undisputed that the tainted discovery was shared directly with Petitioner Donald Myers."

## II.

Although we have never attempted to define its precise contours, we have often noted that courts have the inherent power to ensure both the reality and appearance of integrity and fairness in proceedings before them; and to that end, they necessarily retain the discretion to disqualify attorneys from further representation. *People v. Frisco,* 119 P.3d 1093, 1096 (Colo.2005); *People v. C.V.,* 64 P.3d 272, 275–76 (Colo.2003); *People v. Palomo,* 31 P.3d 879, 882 (Colo.2001); *People v. Garcia,* 698 P.2d 801, 806 (Colo.1985). At the same time, however, we have emphasized the countervailing importance, in both the criminal and civil contexts, of continued representation of parties by counsel of their choice. *Fognani v. Young,* 115 P.3d 1268 (Colo.2005); *People v. Harlan,* 54 P.3d 871, 878 (Colo.2002); *People ex rel. Woodard v. Dist. Ct.,* 704 P.2d 851, 853 (Colo.1985); *cf. Richardson–Merrell, Inc. v. Koller,* 472 U.S.

424, 441, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985) (Brennan, J., concurring) ("A fundamental premise of the adversary system is that individuals have the right to retain the attorney of their choice to represent their interests in judicial proceedings.").

More particularly, we have made clear that disqualification is a severe remedy that should be avoided whenever possible. *Harlan,* 54 P.3d at 877. To the extent that a court's discretion to disqualify attorneys derives from its inherent power to ensure the integrity of the process and fairness to the parties, *id.; Garcia,* 698 P.2d at 806, it is therefore obliged to impose less severe sanctions whenever they would be adequate for that purpose. *See Harlan,* 54 P.3d at 877; *Palomo,* 31 P.3d at 885. Although courts may at times act preemptively to guard against mistrial or reversal on appeal, *see Frisco,* 119 P.3d at 1095, disqualification of an attorney may not be based on mere speculation or conjecture, but only upon the showing of a clear danger that prejudice to a client or adversary would result from continued representation. *Woodard,* 704 P.2d at 853; *accord Fognani,* 115 P.3d at 1272 (noting in addition the skepticism with which motions to disqualify are often viewed, in light of their potential use as dilatory or tactical devices).

Violation of an ethical rule, in itself, is neither a necessary nor a sufficient condition for disqualification. *See Taylor v. Grogan,* 900 P.2d 60, 63 (Colo.1995) ("[T]he mere violation of a disciplinary rule does not automatically result in disqualification."); *Woodard,* 704 P.2d at 853 (potential for violation of the proscription against serving as both witness and attorney was sufficient); *see also Harlan,* 54 P.3d at 877; *Palomo,* 31 P.3d at 882–83. A number of attorney ethical proscriptions, especially those barring representation of conflicting interests, *see, e.g.,* Colo. RPC 1.7—1.11, or acting in conflicting roles, *see, e.g.,* Colo. RPC 3.7 (Lawyer as Witness), have developed precisely to ensure fairness and loyalty to the parties and protect the integrity of the process, and therefore serve as important guides in the exercise of discretion to disqualify. *See People ex rel. Peters v. Dist. Ct.,* 951 P.2d 926, 929–30 (Colo.1998).

It is, however, the exclusive authority of this court to supervise and regulate the practice of law in this jurisdiction. *In re Cardwell*, 50 P.3d 897, 904 (Colo.2002). A trial court's inherent power to disqualify counsel may be exercised only when necessary to avoid unfairness to a party or protect the integrity of the proceedings, and not to discipline or punish. *See Garcia*, 698 P.2d at 806; *see also Schuff v. A.T. Klemens & Son*, 303 Mont. 274, 16 P.3d 1002, 1012 (2000) ("[T]he disqualification of an attorney or firm, or any other sanction, based solely on a rule violation—absent sufficient proof of prejudice—would likely exceed a district court's jurisdiction, in that the sanction would be nothing more than a means of 'punishing' the attorney or firm for the violation.").

### III.

■ With regard to its order of disqualification, the probate court specified neither the authority nor the grounds upon which it relied, beyond indicating that "there ha[d] been abuse of the litigation process" from which "it [was] not possible to separate the law firm of Olsen & Traeger from the abuse and to rectify the wrong." By ordering that "untainted counsel [could] and should proceed with the representation of Donald Myers," it also implied that Olsen & Traeger was, in some unspecified way, "tainted." Similarly, in fashioning a protective order, the probate court considered it undisputed that the "tainted discovery" was shared directly with Petitioner Donald Myers.

The probate court did not attempt to resolve factual disputes about the allegations contained in Porter's motion. It appears therefore that by using the phrase "abuse of the litigation process" and the term "tainted discovery," the court referred only to the paralegal's acquisition of Porter's credit report and her sharing its contents with the client.[1] Neither the court nor Porter has

suggested that Myers' attorneys failed to comply with a specific court order or violated any particular court rule governing discovery.

Nevertheless, the Colorado Rules of Professional Conduct do expressly forbid the use of methods of obtaining evidence that violate the legal rights of non-clients. Colo. RPC 4.4 (Respect for Rights of Third Persons);[2] *see generally* Colo. RPC 3.4 (Fairness to Opposing Party and Counsel) (requiring fair competition in the marshalling of evidence). But even if the paralegal's uncontested affidavit amounted to an admission that she obtained the credit report under false pretenses,[3] a partner or supervising attorney would not be in violation unless his own conduct was criminal or dishonest, *see* Colo. RPC 8.4, or unless he was professionally responsible for his nonlawyer assistant's misconduct, *see* Colo. RPC 5.3. The latter would be the case if he ordered or ratified her conduct, or knew of it and failed to take appropriate action at a time when its consequences could be avoided or mitigated, or failed to make reasonable efforts to insure that the paralegal's conduct was compatible with his own professional obligations, *id.*, but the probate court made no findings of a violation, or even the likelihood of a violation. More importantly, it made no attempt to identify the contents of the credit report or assess its discoverability or the impact of its release.

There has been no suggestion (and given its source, there is little reason to assume) that the report contained attorney-client communications or any other statutorily privileged material. Although consumer reporting agencies are prohibited from releasing credit reports except as prescribed by law, 15 U.S.C. § 1681b(a) (2000); § 12–14.3–103, C.R.S. (2005), and therefore they may fairly be considered private or confidential, distri-

---

1. Although the probate court accepted this allegation as undisputed, it appears that Myers and Olsen & Traeger claimed attorney-client privilege with regard to the paralegal's conversations with the client.

2. "In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third per-

son, or use methods of obtaining evidence that violate the legal rights of such a person." Colo. RPC 4.4.

3. *See* 15 U.S.C. § 1681q (2000) (punishing acquisition of credit report under false pretenses as a crime).

bution is, for obvious commercial reasons, not highly restricted. Even without the express consent of the consumer, credit reports are statutorily releasable under a number of circumstances, including upon court order. 15 U.S.C. § 1681b(a); § 12–14.3–103(1), C.R.S. Other records considered private or financial have been held subject to disclosure in the context of specific litigation, upon adequate showings and subject to adequate restrictions. *See Leidholt v. Dist. Ct.,* 619 P.2d 768, 770–71 (Colo.1980); *Martinelli v. Dist. Ct.,* 199 Colo. 163, 612 P.2d 1083, 1091 (1980); *cf. Corbetta v. Albertson's, Inc.,* 975 P.2d 718 (Colo.1999). Should Porter's credit report contain only material that is similarly disclosable by court order or of minimal relevance to the proceedings, prejudice requiring disqualification would be far from clear.

Under particular circumstances, obtaining information in violation of the legal rights of an opposing party may well require an attorney's disqualification; but standing alone, even an actual violation of Rule 4.4 would be insufficient to support such an order. Disqualification as a remedy for such an impropriety, even where privileged information is actually involved, must turn on a host of other considerations, including the flagrancy of the attorney's conduct; the sensitivity of the information and its relevance to the particular proceedings; and the prejudice to be suffered by the non-moving party. *See, e.g., In re Meador,* 968 S.W.2d 346, 351–52 (Tex. 1998) (articulating a range of factors to be considered in determining whether justice requires disqualification of attorney who has been privy to improperly obtained privileged attorney-client communications of other party).

Because the disqualification of a party's chosen attorney is an extreme remedy, appropriate only where required to preserve the integrity and fairness of judicial proceedings, it must be supported by a showing not only that the proceedings appear to be seriously threatened, but also by a showing that any remedy short of disqualification would be ineffective. While we have never imposed a mechanical hearing requirement on motions to disqualify, justification for this extreme remedy will often require particularized factual findings. The uncontested allegations of Porter's motion were wholly inadequate to support an order of disqualification.

Similarly, whether the probate court's order "in the nature of a protective order" was intended as an order authorized by C.R.C.P. 26(c), to protect Porter from Myers' continuing request for production of her credit report, or as some broader sanction for misconduct, derived from inherent powers of the court as urged by Porter, it was too broad to find support in the record. Because both sanctions, along with the award of attorney fees, are inextricably intertwined and directed at the same conduct and same credit information, the probate court's entire order must be reconsidered and supported with particularity.

IV.

Because the probate court abused its discretion, the Rule is made absolute, and the matter is returned for further proceedings consistent with this opinion.