Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

**2020 CO 33**

**No. 19SA188, *Persichette v. Owners Ins. Co.*—Colo. RPC 1.9(a)—Former-Client Conflicts—"The Same" Matter—"A Substantially Related Matter."**

In this original proceeding, the supreme court considers whether the district court erred in denying defendant's motion to disqualify defendant's longtime former counsel from representing plaintiff.

The court concludes that defendant's former counsel has a former-client conflict under Colo. RPC 1.9(a) that precludes counsel's representation of plaintiff in this case. As relevant here, the court rules that this matter is "substantially related" to matters in which defendant's former counsel previously represented defendant. More specifically, the court determines that the district court misconstrued "a substantially related matter" to mean "the same" matter and then incorrectly found that the information defendant's former counsel probably possesses as a result of its prior representation of defendant is neither confidential

nor advantageous to plaintiff. Because the district court should have disqualified defendant's former counsel from representing plaintiff in order to preserve the integrity and fairness of these proceedings, the court makes the rule to show cause absolute.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2020 CO 33

### Supreme Court Case No. 19SA188

*Original Proceeding Pursuant to C.A.R. 21*
Weld County District Court Case No. 18CV31118
Honorable Shannon D. Lyons, Judge

### In Re

### Plaintiff:

William Persichette,

v.

### Defendant:

Owners Insurance Company.

### Rule Made Absolute
*en banc*
May 4, 2020

**Attorneys for Plaintiff:**
Sherman & Howard L.L.C.
Christopher R. Mosley
        *Denver, Colorado*

Levy Law, P.C.
Marc R. Levy
        *Englewood, Colorado*

Franklin D. Azar & Associates, P.C.
Sean O. McCrary
DezaRae D. LaCrue
    *Aurora, Colorado*

**Attorneys for Defendant:**
Wheeler Trigg O'Donnell
Evan Stephenson
Kristen L. Ferries
    *Denver, Colorado*

**Attorneys for Amicus Curiae Colorado Defense Lawyers Association:**
Ruebel & Quillen, LLC
Julia L. Morgenthau
    *Westminster, Colorado*

**Attorneys for Amicus Curiae The Colorado Trial Lawyers Association:**
Levin Sitcoff PC
Elisabeth L. Owen
    *Denver, Colorado*

**JUSTICE SAMOUR** delivered the Opinion of the Court.

¶1    "Lawyers play a vital role in the preservation of society."  Colo. RPC, Preamble, cmt. 13.  As a member of the legal profession, a lawyer is much more than an advocate for her clients; she is also "an officer of the legal system . . . having special responsibility for the quality of justice."  *Id.* at cmt. 1.  At the same time, a lawyer has an additional responsibility to her "own interest in remaining an ethical person while earning a satisfactory living."  *Id.* at cmt. 9.  It is not unusual for a lawyer to encounter tension among these different (and sometimes competing) responsibilities.  *Id.*  Indeed, "[v]irtually all difficult ethical problems" are rooted in conflicts that inevitably arise as a result of a lawyer's simultaneous "responsibilities to clients, to the legal system and to the lawyer's own interest in remaining an ethical person while earning a satisfactory living."  *Id.*

¶2    Some of the Colorado Rules of Professional Conduct set forth criteria for navigating these conflicts.  *Id.*  In this original proceeding, we examine one of those rules, Colo. RPC 1.9(a), which precludes a lawyer who "formerly represented a client in a matter" from representing a second client "in the same or a substantially related matter" if the second client's interests "are materially adverse to the interests of the former client" and the former client has not "give[n] informed consent . . . in writing."  Specifically, the parties' dispute requires us to hone in on what constitutes "a substantially related matter" under the rule.

¶3    William Persichette, through Franklin D. Azar & Associates, P.C. ("Azar firm"), brought this underinsured-motorist ("UIM") action against Owners Insurance Company ("Owners") for allegedly handling his insurance claim unreasonably and in bad faith.  About three months later, Persichette retained Mark R. Levy of Levy Law, P.C. (collectively "Levy Law") as co-counsel.  Owners promptly moved to disqualify Levy Law pursuant to Rule 1.9(a) on the ground that Levy Law was Owners' longtime former counsel and had a conflict of interest.[1]    The district court denied the motion, finding that Levy Law's representation of Persichette is not "substantially related" to Levy Law's decade-plus representation of Owners.  Owners then filed a C.A.R. 21 petition invoking our original jurisdiction, and we issued a rule to show cause.  Because we conclude that the district court erred in denying Owners' motion to disqualify, we make the rule absolute.

---

[1] Throughout this opinion, we refer to Levy Law collectively because when an individual lawyer "has a disqualifying conflict under Colo. RPC 1.9(a), that conflict may be imputed to the lawyer's firm and require disqualification of the entire firm."  *Villas at Highland Park Homeowners Ass'n v. Villas at Highland Park, LLC*, 2017 CO 53, ¶ 2, 394 P.3d 1144, 1147; *accord* Colo. RPC 1.10.

## I. Factual Background And Procedural History

¶4 Persichette alleges in his complaint that he incurred more than $130,000 in medical bills as a result of a two-car accident with an underinsured driver in May 2018. It is undisputed that Persichette was insured by Owners at the time and that Owners later determined that the underinsured driver was 100% at fault for the collision. According to Persichette, however, Owners failed to: (1) reasonably evaluate and investigate his insurance claim; (2) timely pay benefits related to his claim; (3) communicate with his lawyer in a timely manner; and (4) consent to a proposed settlement with the underinsured driver. Persichette's complaint includes claims for breach of insurance contract, unreasonable delay or denial of payment pursuant to section 10-3-1116, C.R.S. (2019), and bad faith.

¶5 Owners contests Persichette's allegations. It avers that Persichette failed to provide the necessary documentation to allow for a proper adjustment of his insurance claim. Owners further maintains that it made a *Fisher* payment less than a month after Persichette provided such documentation, but that he nevertheless "raced to the courthouse to assert bad faith" while his claim was still under investigation.[2]

---

[2] A "*Fisher* payment" refers to a payment of "a covered benefit" under the policy in question, notwithstanding that other components of the UIM claim may remain

¶6 Approximately three months after the Azar firm initiated this action on his behalf, Persichette retained Levy Law to serve as co-counsel. Persichette's retention of Levy Law is the genesis of the controversy we confront today. Levy Law represented Owners in 455 cases over a 13-year span (between 2004 and 2017). It was one of a few law firms that regularly represented Owners in bad faith litigation in Colorado during that timeframe. In the last 5 years of representation alone, Levy Law billed Owners for 1,771 hours of legal work and collected from Owners more than $5,000,000 in attorney fees. Twenty-three of the cases in which Levy Law represented Owners involved claims that mirror those brought by Persichette.

¶7 Believing that Levy Law had a former-client conflict, Owners moved to disqualify the firm from representing Persichette pursuant to Rule 1.9(a). Owners asserted that Levy Law helped put in place Owners' claims-handling policies and practices, including some Persichette criticizes. And, continued Owners, Levy Law provided legal advice and training to Owners' employees, including Geoffrey Page, the adjuster at Owners in charge of Persichette's claim and the primary target of the allegations advanced in this lawsuit. According to Owners, Levy Law

---

subject to reasonable dispute. *Fisher v. State Farm Mut. Auto. Ins. Co.*, 2015 COA 57, ¶¶ 27–36, 419 P.3d 985, 990–92.

counseled Page and others on ways to minimize Owners' legal exposure and in the process learned confidential client information, including with respect to Owners' litigation strategy in general and Page's strengths and weaknesses as an adjuster in particular. Such information, argued Owners, gives Persichette a real leg up and places Owners at a disadvantage in this cause of action.

¶8 Persichette opposed Owners' motion. He contended that the information acquired by Levy Law during the prior representation is neither confidential nor disadvantageous to Owners in this litigation. Therefore, urged Persichette, his claims are not substantially related to the prior representation.

¶9 The district court denied Owners' motion. Relying on our decision in *Villas at Highland Park Homeowners Ass'n v. Villas at Highland Park, LLC*, 2017 CO 53, ¶ 33, 394 P.3d 1144, 1152, it noted that a party seeking to disqualify its former attorney from representing another party must make a four-part showing under Rule 1.9(a): (1) the moving party and the attorney had an attorney-client relationship in the past; (2) the present matter and the prior matter are "substantially related";[3] (3) the present client's interests are materially adverse to the interests of the former client;

---

[3] Rule 1.9(a) refers to "the same or a substantially related matter." However, Owners did not assert that Levy Law is representing Persichette "in the same . . . matter" in which it represented Owners in the past.

and (4) after consultation, the former client has declined to consent in writing to the challenged representation. The court had little difficulty determining that Owners satisfied the first, third, and fourth elements of the analysis—there was a prior attorney-client relationship between Levy Law and Owners, Persichette's interests are materially adverse to Owners' interests, and Owners has not consented to Levy Law's representation of Persichette. That left one question unresolved: whether this matter is "substantially related" to any matter in which Levy Law represented Owners.

¶10 Viewing the "substantially related" query as "a close call," the district court ultimately sided with Persichette. It ruled that, while the present and prior representations are "substantially similar" and involve "numerous and substantial" similarities, they are not "substantially related." Thus, concluded the court, Levy Law's disqualification is not warranted and Persichette is "entitled to counsel of his choice."

¶11 Owners sought our intervention pursuant to C.A.R. 21, and we chose to exercise our original jurisdiction.

## II. Original Jurisdiction

¶12 Exercise of our original jurisdiction under C.A.R. 21 is a matter "within our sole discretion." *In re Estate of Feldman*, 2019 CO 62, ¶ 11, 443 P.3d 66, 69; *accord* C.A.R. 21(a)(1) ("Relief under this rule . . . is a matter wholly within the discretion

8

of the supreme court."). We are mindful that the remedy provided in Rule 21 is "extraordinary" and "limited in both purpose and availability." *Villas at Highland Park Homeowners Ass'n*, ¶ 22, 394 P.3d at 1151; *accord* C.A.R. 21(a)(1) ("Relief under this rule is extraordinary in nature . . . ."). Consequently, we have exercised our original jurisdiction in circumscribed circumstances, such as "when an appellate remedy would be inadequate, when a party may otherwise suffer irreparable harm, or when a petition raises issues of significant public importance that we have not yet considered." *People v. Vanness*, 2020 CO 18, ¶ 11, 458 P.3d 901, 904 (quoting *People v. Rowell*, 2019 CO 104, ¶ 9, 453 P.3d 1156, 1159).

¶13 Owners reminds us that we have previously exercised our original jurisdiction to review a ruling denying a motion to disqualify brought pursuant to Rule 1.9(a). *See Villas at Highland Park Homeowners Ass'n*, ¶¶ 6, 22–23, 394 P.3d at 1147-48, 1151 (vacating the district court's order denying a motion to disqualify under the doctrine of issue preclusion and remanding to analyze the merits of the motion under Rule 1.9(a)). It urges us to do so again here on the ground that Rule 21 is the only meaningful avenue available to challenge the district court's order declining to disqualify Levy Law.

¶14 We conclude that the circumstances in this case justify exercise of our original jurisdiction. It would be unreasonable to force Owners to wait to raise its disqualification claim on direct appeal because by then Levy Law might have used

9

confidential factual information about Owners to conduct discovery, engage in settlement negotiations, and try the case to a verdict. Once such information is made public, it cannot be taken back any more than the proverbial toothpaste can be put back in the tube. Hence, any remedy Owners may obtain on direct appeal would be too little, too late.

## III. Standard Of Review

¶15 Before embarking on an analysis of Owners' disqualification claim, we pause for a moment to articulate the governing standard of review. This original proceeding presents a mixed question of law and fact. On the one hand, the district court's interpretation of Rule 1.9(a) involves a question of law that we review de novo. *Id.* at ¶ 27, 394 P.3d at 1151. On the other hand, the district court's refusal to disqualify Levy Law is subject to review for an abuse of discretion. *Id.*

## IV. Analysis

¶16 We begin our analysis by examining some general legal principles. We then pivot to apply those principles to the district court's factual findings, all of which are supported by the record and none of which are contested by the parties. For the reasons we set forth in some detail, we hold that the district court misinterpreted Rule 1.9(a) and abused its discretion in declining to disqualify Levy Law.

## A. General Legal Principles

¶17 Disqualification of a party's chosen attorney is "a severe remedy that should be avoided whenever possible." *In re Estate of Myers*, 130 P.3d 1023, 1025 (Colo. 2006). Because Owners' motion to disqualify was premised on Rule 1.9(a), we concentrate our attention on the circumstances that justify a request for disqualification under that rule. We note, however, that violation of an ethical rule is neither necessary nor sufficient for disqualification. *Id.* Rather, because disqualification of a party's attorney is an "extreme remedy" that's "appropriate only where required to preserve the integrity and fairness of judicial proceedings," it must be buttressed "by a showing . . . that the proceedings appear to be seriously threatened" and "that any remedy short of disqualification would be ineffective." *Id.* at 1027.

¶18 We have observed that Rule 1.9 establishes that "an attorney has certain ethical duties to former clients that persist even after the attorney-client relationship has concluded." *Villas at Highland Park Homeowners Ass'n*, ¶ 2, 394 P.3d at 1147. When representation of a client gives rise to a conflict of interest vis-à-vis a former client, the rule requires that the attorney obtain written consent from the former client. Colo. RPC 1.9(a). More specifically, Rule 1.9(a) prohibits an attorney from representing a client "whose interests are materially adverse to those of a former client if the present and former matters are the same or

11

'substantially related'" and the former client has not properly consented. *Villas at Highland Park Homeowners Ass'n*, ¶ 32, 394 P.3d at 1152. Thus, disqualification of an attorney under Rule 1.9(a) requires proof of four elements: (1) the attorney who is the subject of the request to disqualify had an attorney-client relationship in the past with the moving party; (2) the present litigation and the prior litigation involve "the same" matter or are "substantially related"; (3) the present client's interests and the former client's interests are materially adverse; and (4) after consultation, the former client has declined to consent in writing to the challenged representation. *Id.* at ¶ 33, 394 P.3d at 1152.

¶19 Owners plainly satisfied the first, third, and fourth elements. Because there is no disagreement on this point, the focus of this original proceeding is squarely on the second element. And because Owners does not allege that Levy Law's current and prior representations involve "the same" matter, we can zoom in even further to pinpoint the dispositive question: Is Persichette's lawsuit "substantially related" to any matter in which Levy Law previously represented Owners?

¶20 Rule 1.9 does not define "substantially related." But comment 3 to the rule sheds light on the term.[4] It provides that matters are "substantially related" if

---

[4] The comments to the Rules of Professional Conduct do not create ethical obligations independent from the text of the rule. *In re Gilbert*, 2015 CO 22, ¶ 33, 346 P.3d 1018, 1026. But, in interpreting a rule of professional conduct, we may

12

(a) "they involve the same transaction or legal dispute" or (b) "there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." Colo. RPC 1.9 cmt. 3. Owners concedes that the two representations do not involve "the same transaction or legal dispute." *Id.* Accordingly, we concern ourselves only with part (b) of the explanation in the comment.

¶21 While the moving party must show that its former lawyer "would normally have . . . obtained" material information of a confidential factual nature in the prior representation, it need not establish that the attorney *actually obtained* such information in that representation. *Id.* Comment 3 acknowledges that "[a] conclusion about the possession" of confidential factual information "may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services." *Id.* This makes sense. The former client shouldn't have to "reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter."

---

rely on the comments discussing it. *See, e.g.*, *People v. Frisco*, 119 P.3d 1093, 1096 (Colo. 2005).

13

*Id.* To hold otherwise would be to render the rule self-defeating: In order to obtain protection under the rule, the former client would have to reveal in a public proceeding the very information it is seeking to keep confidential. *Villas at Highland Park Homeowners Ass'n*, ¶ 34 n.6, 394 P.3d at 1153 n.6 (quoting Restatement (Third) of the Law Governing Lawyers § 132 cmt. d(iii) (Am. Law Inst. 2000)).

¶22 Because comment 3 speaks in terms of "confidential" information, any information that has already "been disclosed to the public . . . will not be disqualifying." Colo. RPC 1.9 cmt. 3. The same holds true for information previously shared with other parties. *Id.* On the opposite side of the ledger, even if information is confidential, the fact that it has become "obsolete" over time is "a circumstance" that may affect "whether two representations are substantially related." *Id.*

¶23 But the inquiry doesn't end with the attorney's likely possession of confidential factual information gleaned from the prior representation. The relevance of that information in the current representation, including the prejudice to the former client, is also part of the equation. As we have made clear, the critical question in determining whether two matters are "substantially related" is "whether the confidential factual information in the attorney's probable possession is relevant to subsequent claims in a manner that would materially

14

advance those claims." *Villas at Highland Park Homeowners Ass'n*, ¶ 36, 394 P.3d at 1153 (emphasis omitted). This determination hinges on the theories and allegations implicated in each representation. *Id.* The court must undertake "a fact-specific" examination that is securely anchored to the particular circumstances involved in each representation. *Id.* at ¶ 37, 394 P.3d at 1153. This process, which has been coined a "factual reconstruction," entails consideration of both "the likelihood that the attorney would have been exposed to confidential client information" during the prior representation and "the likelihood that such confidential material will be relevant to the later representation" in a way that will "disadvantage the former client." *People v. Frisco*, 119 P.3d 1093, 1096 (Colo. 2005).[5]

¶24    When the former client is an organizational client, "general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation." Colo. RPC 1.9 cmt. 3. However, "knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation." *Id.*

---

[5] Given the fact-specific nature of the analysis, the parties' discussion of nonbinding decisions, though appreciated, is not particularly informative.

## B. Application

Persichette argues that the information garnered by Levy Law about Owners during the prior representation is neither confidential nor likely to advance his position in this case. But the district court's extensive factual findings belie his position. And those findings enjoy abundant support in the record and are uncontested by Persichette. This begs the question as to how the district court ultimately embraced Persichette's position on Owners' motion to disqualify. We inspect each aspect of the court's order to discern the answer.

We first conclude that the district court misconstrued "a substantially related matter" to mean "the same" matter. We then rule that the court erred in holding that the information Levy Law probably possesses as a result of the prior representation of Owners is neither confidential nor advantageous to Persichette. We end by determining that the court should have disqualified Levy Law in order to preserve the integrity and fairness of these proceedings.

### 1. "A Substantially Related Matter" Does Not Mean "The Same" Matter

To properly understand the district court's interpretation of "substantially related," it is helpful at the outset to review its factual findings. Therefore, the court's findings of fact serve as the launch pad for our analysis:

- Levy Law is "intimately familiar with [Owners'] claim handling policies and procedures, negotiation strategy, settlement pay ranges, and the factors that motivate [Owners] to settle or view a case as a risk."

16

- Levy Law "is intimately familiar with [Owners'] handling of cases involving uninsured motorists, unreasonable delay [claims], and bad faith [claims]"; this includes Owners' "hierarchy of settlement authority," as well as its "negotiation strategy" in dealing with such cases.

- Levy Law "advised [Owners] on how to handle claims and defended [Owners] against bad faith claims."

- Levy Law knows Owners' personnel and is aware of "the personalities and tendencies of key figures involved as witnesses for [Owners]."

- Levy Law "made presentations to [Owners'] employees" on topics that are "relevant" to this lawsuit, such as memorializing communications with insured customers.

- Levy Law is "very familiar with Mr. Page's work as a claims adjuster."

- Levy Law "trained Mr. Page on claims-handling and bad faith avoidance practices"; it also trained him "as a witness in bad faith and unreasonable delay cases."

- "[B]oth representations involve the same legal material and theories: . . . bad faith theories and claim-handling practices."

- "The present litigation involves a matter that is substantially similar to the prior representation."

- The "similarities between the current and prior representation[s] are numerous and substantial."

- "The most troubling aspect of Levy Law's representation of [Persichette] is how close Levy Law has come to attacking [its] own work"; after advising Owners "on how to handle claims" and defending Owners "against bad faith claims," Levy Law is now "prosecuting a bad faith claim against [Owners] and potentially attacking the very policies and procedures the firm helped put in place."

- Persichette "may derive certain advantages" from Levy Law's prior representation of Owners.

¶28 Despite these findings, the district court ruled that Levy Law's current representation of Persichette and prior representation of Owners are not "substantially related." In so doing, it placed significant stock in the following hypothetical example of a former-client conflict in comment 3:

> [A] lawyer who has previously represented a client in securing environmental permits to build a shopping center would be precluded from representing neighbors seeking to oppose rezoning of the property on the basis of environmental considerations . . . .

Colo. RPC 1.9 cmt. 3.

¶29 Comparing the example to this litigation, the court initially characterized the two as being "much alike." It observed that in each case the prior and current representations "involve the same legal material and theories"—environmental considerations in one case and bad faith theories and claims-handling practices in the other. But, noted the court, the analogy doesn't hold because, unlike the example, which involves the same piece of property in the prior and current representations, here the subject of the litigation has changed from the prior representation to the current representation. Elaborating, the court pointed out that Levy Law is representing Persichette in a matter that's "separate from" the matters Levy Law previously handled on Owners' behalf. As a result, explained the court, "this litigation revolves around events" that are "distinct from those in Levy Law's prior representation of [Owners]" and Levy Law possesses no knowledge of Persichette's accident or Owners' handling of his claim.

18

¶30    This rationale reveals that the court read Rule 1.9(a) too narrowly. The court essentially collapsed "a substantially related matter" into "the same" matter. It distinguished the former-client conflict in the example on the ground that Levy Law's prior and current representations involve different matters (not the same matter). From the court's perspective, Owners' motion to disqualify turned on whether Levy Law's prior representation included Persichette's claim. Because it did not, it denied the motion. But this analytical framework doesn't jibe with the text of Rule 1.9(a), which, in certain circumstances, precludes an attorney who has represented a client in a matter from subsequently representing another client "in the same . . . matter" *or* "a substantially related matter." For all intents and purposes, the court read "a substantially related matter" out of the rule. This the court could not do. *See People v. Baker*, 2019 CO 97M, ¶ 14, 452 P.3d 759, 762 ("We apply the[] same principles of statutory interpretation to rules . . . ."); *McCoy v. People*, 2019 CO 44, ¶ 38, 442 P.3d 379, 389 (indicating that "we must avoid constructions that would render any [statutory] words or phrases superfluous").

¶31    Significantly, the exegesis in comment 3 contains an additional example, which we find more apposite to the motion to disqualify filed by Owners:

> [A] lawyer who has represented a businessperson and learned extensive private financial information about that person may not then represent that person's spouse in seeking a divorce.

19

In this example, it is clear that the two representations do not involve the same matter—in the former representation, the lawyer advised the businessperson with respect to business dealings, while in the subsequent representation, the lawyer seeks to advise the businessperson's spouse in the couple's divorce proceeding. The lawyer is nevertheless prohibited by Rule 1.9(a) from entering her appearance on the spouse's behalf in the divorce proceeding because the two representations are "substantially related." More to the point, and applying *Villas at Highland Park Homeowners Ass'n* and *Frisco*, there is a likelihood both that the lawyer would have been exposed to the businessperson's confidential financial information in the prior matter and that such information would be relevant in the divorce proceeding in a manner that would disadvantage the businessperson. *See Villas at Highland Park Homeowners Ass'n*, ¶ 36, 394 P.3d at 1153; *Frisco*, 119 P.3d at 1096.

¶32 The district court discussed our holdings in *Villas at Highland Park Homeowners Ass'n* and *Frisco*. But, guided by its mistaken construction of Rule 1.9(a), it incorrectly held that Owners did not meet either prong of the "substantially related" test.

### 2. Levy Law Likely Gleaned Confidential Client Information During Its Prior Representation Of Owners

¶33 The district court held that the information Levy Law likely acquired during the prior representation of Owners is not confidential. But this ruling can't be squared with the court's pertinent factual findings, which we revisit now.

20

¶34 During its prior representation of Owners, Levy Law learned about Owners' general claims-handling policies and procedures, hierarchy of settlement authority, negotiation strategies, settlement pay ranges, and the factors Owners considers in assessing whether to settle a claim. More specific to this case, Levy Law provided advice and training to Owners and Owners' employees on the policies and procedures Owners uses to handle claims involving uninsured motorists, unreasonable delay, and bad faith—precisely the types of claims at issue here. Not only did Levy Law defend Owners in many cases against claims like the ones brought by Persichette, it worked closely with Page, the claims adjuster whose actions lie at the core of this case. Levy Law instructed Page on claims-handling and bad-faith-avoidance practices and educated him on being an effective witness. As well, Levy Law is familiar with Page's higher-ups, is keenly aware of their personalities and tendencies, and has inside information on how they come across as witnesses.

¶35 This information is not ubiquitous in the insurance industry. Nor is Persichette likely to obtain the bulk of it through discovery. Almost nothing in the record corroborates the district court's outlook on the issue of confidentiality.

¶36 We conclude that the district court's factual findings establish that Levy Law probably possesses confidential factual information about Owners. An attorney defending Owners in the prior representation likely would have been exposed to

21

confidential client information.  We reiterate that under Rule 1.9(a), Owners didn't have to show that Levy Law actually possesses confidential client information about Owners—only that it likely does.[6]  *See Villas at Highland Park Homeowners Ass'n*, ¶ 36, 394 P.3d at 1153; *Frisco*, 119 P.3d at 1096.  On the record before us, we find that Owners met its burden with respect to the first prong of the "substantially related" test.  *See Fognani v. Young*, 115 P.3d 1268, 1272 (Colo. 2005) (noting that "the moving party has the burden to establish grounds for disqualification").

### 3.  The Confidential Client Information In Levy Law's Probable Possession Is Likely Relevant In This Litigation In A Way That Will Disadvantage Owners

¶37     The district court found that the information Levy Law received during its prior representation of Owners is general "playbook information, which is not disqualifying."   "Playbook" information refers to a client's policies and procedures.  *Velazquez-Velez v. Molina-Rodriguez*, 235 F. Supp. 3d 358, 361 (D.P.R. 2017).  Such information, though "not in itself cause for disqualification," may well "factor into the decision to the extent it is relevant and gives the non-moving party an 'unfair edge' in the litigation."  *Id.* (citing Charles W. Wolfram, *Former Client Conflicts*, 10 Geo. J. Legal Ethics 677 (1997)).  This is consistent with comment 3,

---

[6] Requiring Owners to prove that Levy Law actually possesses confidential client information about Owners could allow Persichette, through his retention of Levy Law, to strongarm Owners into divulging confidential client information.

which provides that, while "general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation," knowledge of "specific facts" gained during the prior representation "that are relevant to the matter in question ordinarily will preclude such a representation." Colo. RPC 1.9, cmt. 3. The district court considered this part of comment 3, but nevertheless ruled that the information Levy Law probably possesses about Owners is not likely to disadvantage Owners in this case. Here, again, the relevant factual findings undermine the court's determination.

¶38 In its thorough order, the district court stated that Levy Law's prior representation of Owners and current representation of Persichette involve "the same legal material and theories," including bad faith theories and attacks on claims-handling practices. Along the same lines, the court remarked that the two representations involve substantially similar matters that include numerous and significant similarities. Thus, the court was troubled, as are we, by the prospect that this case will require Levy Law to attack its own work, including the very policies and procedures the firm helped Owners put in place. Indeed, as the court acknowledged, Levy Law has already come close to doing so.

¶39 Not surprisingly, the district court recognized that Persichette may well "derive certain advantages" from Levy Law's prior representation of Owners. We do too.

23

¶40 In our view, the district court's findings amply establish that the confidential client information Levy Law likely possesses about Owners is probably relevant to Persichette's claims in a way that is advantageous to Persichette and detrimental to Owners. As Owners' expert, Stephen Masciocchi, aptly opined, given that Levy Law "trained Owners' employees, including Page, on the very claims-handling and bad-faith-avoidance practices at issue in this case," it "would have a grossly unfair advantage in attacking Owners' practices here—an advantage that no unconflicted firm would possess."[7]

¶41 We are unpersuaded by Persichette's contention that any confidential client information Levy Law may have about Owners is innocuous because there is no basis to believe that Owners' claims-handling policies and procedures are the same today as they were during the prior representation. Persichette is wrong. The district court specifically found that, as a result of the prior representation, Levy Law has knowledge of Owners' current claims-handling policies and procedures. This finding is both supported by the record and uncontroverted.

¶42 Perhaps realizing that he faced a steep uphill climb on this aspect of the analysis, Persichette at some point represented to the district court that he would

---

[7] Mr. Masciocchi is a partner in the law firm of Holland & Hart, LLP. He specializes in legal ethics, appellate litigation, and class actions.

not attack Owners' claims-handling policies and procedures to prove his bad faith claim, but would instead cabin that claim by arguing only that Owners failed to comply with those policies and procedures. The district court was apparently persuaded, though it cautioned Persichette about boxing himself in by retaining Levy Law and narrowing the scope of his bad faith claim. Unlike the district court, we are unmoved by Persichette's strategy.

¶43 In light of the factual findings in this case, it makes no meaningful difference whether Persichette attacks Owners for the policies and procedures Levy Law helped put in place or Page for not following them. In either case, confidential client information Levy Law probably possesses about Owners' policies and procedures—including those that are front and center in this litigation—is relevant in this action in a way that likely disadvantages Owners. Certainly Levy Law's intimate familiarity with Page, including as a result of educating and training him as an adjuster and a witness, is likely to give Persichette a head start in alleging that Page failed to follow Owners' policies and procedures.

¶44 In any event, Persichette's proposal to cast away part of his case to sidestep a former-client conflict under Rule 1.9(a) may give rise to a concurrent conflict under Colo. RPC 1.7(a)(2). A concurrent conflict occurs when "there is a significant risk that the representation of one . . . client[] will be materially limited by the lawyer's responsibilities to . . . a former client." Colo. RPC 1.7(a)(2). Hence,

25

in attempting to stave off Owners' motion for disqualification, Levy Law may be hopping out of the Rule 1.9(a) frying pan and into the Rule 1.7(a)(2) fire.[8]

¶45    In short, we conclude that Owners, as the moving party, met its burden with respect to the second prong of the "substantially related" test.  If Levy Law is allowed to remain as one of Persichette's counsel of record, it is difficult to fathom that he won't be advantaged—and, correspondingly, that Owners won't be disadvantaged—during settlement negotiations, in discovery, and at trial.

¶46    The question still remains whether the extreme remedy of disqualification is required in this case.  We tackle that question now.

### 4.  Levy Law Must Be Disqualified To Preserve The Integrity And Fairness Of These Proceedings

¶47    That Levy Law's appearance on behalf of Persichette violates Rule 1.9(a) is not sufficient to warrant disqualification.  Disqualification is only appropriate when it is required to preserve the integrity and fairness of the proceedings.  *In re Estate of Myers*, 130 P.3d at 1027.  Here, the district court's factual findings and our legal determinations leave no doubt that, given Levy Law's prior representation

---

[8] Rule 1.7(b) allows a lawyer to represent a client notwithstanding the existence of a current-client conflict if four conditions are met.  We need not, and therefore do not, pass judgment on whether those conditions are met here.  We observe, however, that one of those conditions requires "informed consent, confirmed in writing," by "each affected client."  Colo. RPC 1.7(b)(4).

of Owners, Levy Law's current representation of Persichette is likely to obtain an advantage for him and a disadvantage for Owners. Because allowing Levy Law to remain as Persichette's counsel would seriously threaten the integrity and fairness of the proceedings, and because there is no effective remedy outside of disqualification, the district court should have granted Owners' motion to disqualify.

## V. Conclusion

¶48 We conclude that the district court erred in denying Owners' motion to disqualify Levy Law. Accordingly, we make the rule to show cause absolute and remand the matter to the district court for further proceedings consistent with this opinion.